# Foster *against* Fox.

The purchase of a debt entitles the purchaser to all the creditor's securities for it.
A vendor having brought an ejectment to enforce the payment of a balance of purchase money, obtained a judgment; after which a creditor of the vendee paid the money due, and took a transfer of the debt: *held*, that he was also entitled to the judgment, and might revive it for his own use, and thus enforce the payment of the money against the purchaser of the vendee's interest at sheriff's sale, although he had subsequently received a conveyance from the vendor.

ERROR to the District Court of *Crawford* county.
William Foster for the use of Willis Benedict against Daniel Fox, with notice to Daniel Stratton, terre-tenant.
This was a *scire facias* upon a judgment in ejectment. The original was an action of ejectment by William Foster against Daniel Fox, in which a general judgment for the plaintiff was confessed on the 21st of October 1830. William Foster was called as a witness by the defendant, and testified that when the judgment was entered he understood that Dr James Galbraith had purchased from Fox, and was to become paymaster of the balance of the purchase money due by Fox to Foster. That on the same day an article of agreement was entered into between Galbraith and Foster, by which Galbraith purchased the premises from Foster for the balance of the purchase money then due and the cost of the ejectment, and which were to be paid on the 15th day of January 1831. Galbraith never paid any money pursuant to this article, but left the country. In February 1832, Willis Benedict, for whose use this *scire facias* was brought, who was a judgment creditor of Fox, and had the first lien on the equitable title, began to negotiate with William Foster for the purchase of the claim he held against Fox on account of the payment of the balance of the purchase money; on the 9th of May following the purchase was consummated by Benedict delivering the solvent notes, or the notes that were to be solvent, to the amount of the said purchase

[Foster v. Fox.]

money, amounting in all to $162.38, including $9.70, the cost of the ejectment. Stratton, one of the defendants, had been negotiating about the same time to purchase. Benedict and Stratton each had judgments against Fox. Benedict's was the oldest judgment, and was paid off when he issued his *venditioni* in 1833, by Stratton. The premises in question were sold on Stratton's judgment on the 6th of August 1836, as the property of Daniel Fox, and purchased by Stratton for $205, the deed made to him by the sheriff on the 8th of August, and acknowledged on the 13th of the same month and year, after this purchase at the sheriff's sale by Stratton. William Foster delivered him a deed dated the 20th of August 1835, and acknowledged the 3d of February 1837, from him (Foster) to Fox for the premises.

When Benedict purchased the remaining part of the purchase money due by Fox, it seems it was the opinion of Foster and Benedict, that when the premises should be sold on either of the judgments, Benedict could call for the balance of the purchase money, which would be a lien out of the proceeds of the sale. There was some evidence showing that at the time of the sale Benedict put up a notice, but there was no copy of the notice exhibited, it being lost, and the witness was unable to prove the contents of it. Benedict did not get a deed from Foster when he made this purchase; and Foster testified that he stated that he would give the deed to whomever the purchaser should be at the sheriff's sale, but that he expressly refused to assign the judgment in ejectment, and did so at all times; and that he did not know that this writ of *scire facias* had issued until about a week before the trial.

The court below was of opinion, that if Benedict neither obtained an assignment of the judgment nor a deed from Foster for the premises as a security for the money he had paid, his payment must be considered as a mere satisfaction of the judgment, and that he was not entitled to recover in this suit.

*Church* and *Derrickson*, for plaintiff in error, argued that the assignment of the debt carried with it all the incidents of it, and all the remedies for its collection; and on this point cited 2 *Serg. & Rawle* 84; 2 *Penn. Rep.* 379; 17 *Serg. & Rawle* 407; 1 *Mad. Chan.* 435; 1 *Johns.* 590; 4 *Little* 189, 317; 1 *Rand.* 466; 9 *Cow.* 36; 5 *Cow.* 202; 9 *Cow.* 747; 1 *Rawle* 328.

*Riddle* and *Pearson, contra,* contended that Benedict had no such assignment of the debt or judgment as entitled him to pursue it by reviving the judgment against the purchaser at sheriff's sale, to whom also the legal title had been delivered. On the contrary the proof was, that Foster expressly refused to assign the judgment, and Benedict went into the payment of the money with full notice of this.

[Foster v. Fox.]

The opinion of the Court was delivered by

Gibson, C. J.—It seems to have been a predominant idea in the mind of the judge, that Benedict was not incidentally entitled to the judgment for the land as an accessory of the debt; and that as he had not specially stipulated for it, he was not entitled to it at all.   But the principle of equity that the purchaser of a debt is a purchaser of all the creditor's securities for it, is settled by many decisions; and it would be glaringly unjust to apply any other to the case under consideration.   Foster had recovered in ejectment to enforce the payment of purchase money which Fox owed for the land; and it is no matter that the verdict was not conditional, or to be released on payment of a designated sum: as a security, the judgment was not the less operative for that.   The claim to the residue of the purchase money, for which Foster appears to have had no other security, was purchased by Benedict; and what would the ownership of it have availed him without the judgment as a means to enforce it?   The drift of the argument is to prove that he paid his money for a shadow without the substance.   It was admitted by the judge that the purchase gave him a right against the person of Fox; but it would be a right without a remedy, which is, in effect, no right at all.   The law however is not so absurd as to leave Benedict in that predicament.   By purchasing the debt, he purchased, even without a special stipulation for it, the means to enforce it.   It is not pretended by Foster that the judgment was excepted at the time of the purchase; nor would it be material that it had been so, for the accessory would have followed its principal, from which it is inseparable, by operation of the law, which Foster would have been unable to control. The judgment continued to exist for some purpose after the debt secured by it had been transferred; and if Benedict could not enforce it, who else could?   If it existed at all, it was for his use alone.   It was not formally transferred to him, because it was supposed, both by him and by Foster, that the purchase money was a lien on the land and would come out of the price of it when it should be sold on Benedict's own judgment, or on the younger judgment of Stratton.   It would be a reproach to the law if this common mistake, which imposed an additional obligation on Foster to repair the consequences of it, should cost Benedict the debt and the price of it.   But Foster, instead of assigning the judgment when the mistake was discovered, did what?   Conveyed the legal title to the land remaining in him, to Stratton, with a view to prefer Stratton's judgment to this very debt for which Foster had received value from Benedict!   The best of it is, that Benedict can do without his assignment; for, as was said in *Fleming* v. *Beaver*, (2 *Rawle* 132), the right of substitution is everything, and actual substitution nothing: and his conveyance of the title is, for any purpose beneficial to Stratton, absolutely worthless.   The court is bound to let Benedict mark the judgment to his use or

[Foster v. Fox.]

control its direction; and as Foster became his trustee, not only of the judgment but the title also, Stratton, who purchased with notice or without a valuable consideration, took the title as a trustee in his stead. Benedict therefore has the same right to have the judgment revived to his use, that Foster had before he sold the debt. It is true, as the jury were directed, that he is not entitled to have a conditional verdict for a specific sum. Our peculiar practice, which, in other cases, makes a judgment of revival a judgment of recovery, and not an award of execution merely, has not been extended to a *scire facias* on a judgment in ejectment; nor could it be, for the original judgment is not for money but for land. The proper judgment in this case, will enable Benedict to turn Stratton out of possession and hold the land till he has received the residue of its price; and when that is done, Stratton may regain the possession. The bills of exceptions to evidence, lose their importance by this decision of the ruling point; and the subordinate points were either irrelevant or properly decided.

Judgment reversed, and a *venire de novo* awarded.