## Holt *versus* Bodey.

1. If the assignee of a joint bond by two persons, one the principal debtor and the other his surety, upon which he has had judgment entered, release from its lien real estate of the principal debtor sufficient to pay the judgment, he thereby discharges his surety. If but *part* of the property be released, the surety does not continue to be bound merely because the jury may believe that there is sufficient property of the principal left bound by the judgment to pay it; this would be throwing the risk entirely on the surety. If any of the property of the principal has been released, it is incumbent on the *creditor* to show that the part released could not have been made available *at all*, or not beyond a certain amount; to the extent of the value of the part released, the surety is discharged. And it is not material whether the creditor knows or does not know, at the time of the release, of the relation of principal and surety between the debtors. The object of the bond, ordinarily, is to show the relation of the debtors to the creditor, *not to each other;* and if the creditor be ignorant of their relation as principal and surety, he should act accordingly.

2. When the surety in a joint judgment against the principal and himself makes defence on the ground of a release by the creditor of the property of the principal debtor, the defence being purely an equitable one, he should plead specially the ground of defence: the plea of *payment* alone is not a proper plea.

ERROR to the Common Pleas of *Montgomery county.*

This was a *scire facias* to revive the lien of a judgment entered in favor of Jesse Holt *v.* Joseph H. Bodey and Henry Bodey, Senior.

Joseph H. Bodey and Henry Bodey, Senior, on the 1st day of April, 1842, executed a bond *with warrant of attorney* to Samuel Thomas, conditioned for the payment of $800 on 1st April, 1843, with interest.

On 1st July, 1844, the executors of the will of Samuel Thomas assigned the bond and warrant to Jesse Holt, the plaintiff, who, on the same day, had judgment entered in the Common Pleas of Montgomery county, against the obligors. To revive the lien of it the *scire facias* was issued on the 18th May, 1849. On the 28th July following, judgment for want of appearance was taken against Joseph H. Bodey. Henry Bodey, Senior, appeared, but before plea pleaded he died. He died in June, 1849. The administrators of his estate were substituted. They pleaded payment with leave, &c., and notice of special matter was given to the effect that Henry Bodey, Senior, was the surety of Joseph H. Bodey in the bond, and that after judgment on the bond was entered, the plaintiff, without the consent of Henry, released from the lien of the judgment property of Joseph H. Bodey of greater value than the whole amount of the judgment.

On the trial of the *scire facias* suit, on the part of defendants was given in evidence a deed by Samuel Bodey to Joseph H. Bodey, the principal debtor, for a lot in Norristown of 38 feet front by 261 in depth, for the consideration of $450. Deed dated April 10, 1839.

[Holt *v.* Bodey.]

Also a release, dated 1st April, 1845, by Jesse Holt, the plaintiff, to Joseph H. Bodey, releasing two messuages and lots of ground in Norristown from the lien of the judgment in question. It provided that nothing contained in it should be construed to lessen the amount due on the judgment, or to release the lien of it from any other than the premises described in the release. Consideration stated to be one dollar.

Also a deed by Joseph H. Bodey to W. L. Cornog, dated 22d March, 1844, for a house and lot in Norristown, the lot being 19 feet in front by 140 feet in depth, and being part of the same lot conveyed by Samuel Bodey to Joseph H. Bodey, on April 10, 1839.

Also a deed, dated August 17, 1847, from Joseph H. Bodey to Isaac Roberts, for a house and lot in Norristown—Consideration $2600.—The admission in evidence of this deed, was objected to on part of the plaintiff as irrelevant. It was admitted, and exception taken on part of plaintiff.

On part of defendants, the administrators, it was testified that the two houses released by Holt, were worth at the time of their being released, about $600 each ; and that they were worth more at the time of the trial. That the brick house sold to Roberts was worth about $2500, on 1st July, 1849, at a credit sale. This property sold to Roberts was not included in the release by Holt, but it was stated in the argument that it was offered to show, that the judgment was a lien on the premises conveyed to Roberts, and that the lien was suffered to expire as to this property, Roberts not being notified as *terre* tenant.

Joseph H. Bodey, the co-obligor in the bond, was called, on the part of the administrators, to prove that Henry Bodey, Senior, was his *surety* in the bond. Objection was made on the part of the plaintiff. The defendants paid into Court $40 to cover costs, and released the proposed witness from liability to them for costs in the proceeding. He was admitted, and exception was taken on part of plaintiff. He testified that his father was his security in the bond. That the money was borrowed *for his use.* He received a part of the money ; the $800 had been loaned to his brothers, Jacob and Henry, before the witness borrowed it ; their bond was given up and the bond in question given. That he received $400, and the other $400 remained in the hands of his brothers.

One of the executors of the will of Samuel Thomas, the obligee, was examined, and, *inter alia*, testified that he never informed Jesse Holt who was principal or surety in the bond ; nor heard any one else do so.

A. W. Corson was examined, and said that he was present when the bond was given, and thought that the old man was surety and the son principal ; that this was his impression ; he could not say how the impression was produced. He thought he wrote the bond.

[Holt *v.* Bodey.]

On the part of the plaintiff evidence was given of two *mortgages* upon the lot in Norristown, one of which was by Joseph H. Bodey to F. Wampole for $1000, recorded May 17, 1841.

Also of a judgment against Joseph H. Bodey and Henry Bodey for $200, entered April 9, 1841; another by same for $100, entered 1st May, 1841; and another by same for $500, entered April 1, 1842.

On the part of the plaintiff, the Court was requested to charge the jury: 1. That the defendants are bound to prove by plain and positive proof, that Henry Bodey was merely security in the bond, and if there is no such proof, the plaintiff is entitled to recover.    2. That the evidence of Henry Bodey being only security in the bond in this case, is not sufficient to prevent the plaintiff recovering.    3. If the jury believe that Henry Bodey borrowed the money for Joseph H. Bodey's use, and although Joseph H. Bodey received the money or part of it, still the plaintiff is entitled to recover the whole amount of his judgment.    4. If the jury believe that Jesse Holt took an assignment of this bond *without any knowledge or notice* of Henry Bodey being only security, even if he was such security, the plaintiff is entitled to recover.    5. The plaintiff not proceeding in this judgment by *sci. fa.* or otherwise before the lien expired, and suffering it to expire, does not discharge Henry Bodey, if he was security, and will not prevent the plaintiff's recovering in this action, there being no notice from Henry Bodey to proceed.    6. That if the jury believe that at the time Jesse Holt executed the release given in evidence, dated April 1st, 1845, the property released *was subject to liens to a greater amount than it was worth*, such release will not discharge Henry Bodey, even if he was security, nor prevent the plaintiff from recovering in this action.

KRAUSE, J., instructed the jury—"This action is a *sci. fa.* on a judgment entered in this Court for $800, 1st July, 1844, on bond and warrant of attorney, dated 1st April, 1842.    The defendant has given evidence that Holt released some property from the lien of his judgment; and that he had other property, which Joseph H. Bodey sold, and as to which the lien of the judgment in question was supposed to have run out for the want of *sci. fa.* in time to revive it. This neglect to revive it is set up by defendant, but the Court instructs the jury that it is no defence in this action.

"There is evidence that Henry Bodey, sen., was surety in this judgment in question, in the testimony of Joseph H. Bodey, and Allen W. Corson, which it is the duty of the jury to consider. As to Corson's testimony, however, the jury must see whether he had facts on which he based his impressions that Henry Bodey was merely a surety; for naked impressions alone are not evidence. A witness's impressions are evidence only where he has facts on

[Holt *v.* Bodey.]

which they may be founded; but where he has no such facts for a foundation, they are not to be regarded by the jury.

"Joseph H. Bodey is a competent witness. The jury, however, will take into consideration his credibility, and whatever is disclosed in the testimony to affect it.

"The Court then instructs the jury, that if Henry Bodey was not surety in this bond, the defence wholly fails, and *there must* be a verdict for plaintiff for the whole of his demand. But if he was surety merely, then the law is as stated in 9 *W. & S.* 43, Neff's Appeal, provided it is found that plaintiff released property on which his judgment in evidence was a lien. The rule of law in such case is that the surety is discharged in whole or in part, according to the proof he advances. If the evidence shows to the satisfaction of the jury, that the plaintiff gave such release, and Henry Bodey was merely a surety in the bond and judgment upon it, then the next question for the jury is, to what extent did the release take away property in land, which was necessary to satisfy the judgment? in other words, if Henry Bodey, as surety, had paid the judgment and taken an assignment of it from plaintiff, what deficiency, in virtue of said release, would be found in Joseph H. Bodey's real estate, according to its value, and its liability to the payment of said judgment, in the sum required to satisfy it? If the release swept away all the property on which the judgment was a lien and Henry Bodey was but surety, he is wholly discharged; but if but a part of it was released, he is discharged to the extent of such part only, or *pro tanto* to the amount it took from the grasp of the judgment.

"It remains to answer points submitted by plaintiff's counsel. The first is affirmed if the jury are not satisfied from the testimony that Henry Bodey was merely a surety. The second is answered by saying there is evidence that Henry Bodey was merely a surety, and if it satisfies the jury of that fact, it is sufficient. The third is answered by saying that if the money borrowed was for Joseph H. Bodey, to be his debt, with Henry Bodey as surety, and the plaintiff released property from the lien of the judgment in question, the plaintiff is entitled to recover whatever sum Henry Bodey might recover out of Joseph Bodey's property if he had paid the judgment or taken an assignment of it, or had himself subrogated, and no more. The fourth is negatived by the Court. The fifth is affirmed by the Court. As to the sixth, the answer of the Court is that the point is not true merely on the ground that the property released was subject to liens to more than its value. The question is, did the release so operate as to discharge from the lien of the said judgment property which before such release was available for satisfaction of the judgment, and to what extent? To the extent that said release did not discharge such property, the plaintiff may recover."

[Holt v. Bodey.]

Exceptions were taken on part of plaintiff to the charge.
Verdict was rendered for the defendants.

It was assigned for error: 1. The Court erred in admitting in
evidence the deed from Joseph H. Bodey to Isaac Roberts. 2. In
admitting Joseph H. Bodey as a competent witness for the defend-
ants. 3. In charging the jury as follows: "Then there is evidence
that Henry Bodey, sen., was surety in the judgment in question,
in the testimony of Joseph H. Bodey and Allen W. Corson, which
it is the duty of the jury to consider." 4. In charging the jury,
that if Henry Bodey was surety merely, then the law is as stated
in Neff's Appeal, provided it is found that plaintiff released pro-
perty on which his judgment in evidence was a lien. 5. In charg-
ing as follows: "If the release be found to be a fact, and swept
away all the property on which the judgment was a lien, and
Henry Bodey was but surety, he is wholly discharged, &c." 6. In
their answer to plaintiff's third point. 7. In answering nega-
tively, and not affirming the plaintiff's fourth point. 8. In answer-
ing the plaintiff's sixth point, in saying that it was untrue, merely
on the ground that the property released was subject to liens to
more than its value.

The case was argued by *J. R. Breitenbach* and *T. S. Bell*, for
Holt, the plaintiff in error: It was, *inter alia*, observed, that to
bring the case within the principle decided in Neff's Appeal, it was
necessary for defendants to have shown that the plaintiff, at the
time of executing the release, knew that Henry Bodey was only
surety in the bond.

The bond in question is joint and several, and when the plain-
tiff took the assignment of it, he was not bound to inquire whether
one of the obligors was surety only. There was nothing on the
face of the bond that led to the inquiry: 9 *Ser. & R.* 141; 10
*Barr* 431.

If at the entry of the judgment and the execution of the release,
the property released was encumbered to an amount equal to its
value, Henry Bodey was not discharged. Whether it was so
encumbered was a question for the jury. The testimony showed
that there was such an encumbrance, and the Court ought to have
left it to the jury.

*Powell* and *Fornance*, for defendants.—Holt released the prin-
cipal property bound. The whole debt could have been realized
out of the property released. The authorities cited on part of
plaintiff in error show, that an assignee is not to be subjected to
the latent equities of third persons; but he is subject to equities
between *the original parties*. As to the *first*, without being in-
formed as to them he is not to be expected to inquire: 5 *Barr* 232;

·[Holt *v.* Bodey.]

9 *Id.* 404; 1.*Rawle* 227; 17 *Ser. & R.* 287; 1 *Bin.* 434; 1 *Dallas* 23; 10 *Barr* 431.    That a release given by the creditor to one of two joint and several obligors, will discharge both, is the law of Pennsylvania: 1 *Wh.* 358, Ingersoll *v.* Sergeant. And in the case of Neff's Appeal, 9 *W. & Ser.* 36, 43, it is decided that a release of the principal will discharge the surety. Therefore, whether Joseph Bodey and Henry Bodey were principal and surety, or joint and several obligors, if the plaintiff released Joseph H. Bodey, he discharged Henry; and the fact of other liens existing against Joseph could not aid the plaintiff in this action.

The opinion of the Court was delivered, April 5, by

LOWRIE, J.—To get at the principles of this case by the nearest road, it may suffice to state that here was a bond by two, and a judgment entered upon it, and now on a *scire facias* to revive the judgment, one of them suffers judgment by default, and the other takes defence on the ground that he was surety in the bond, and that the plaintiff released from the lien of the judgment, property of the other defendant of sufficient value to secure the debt.

Principles of equity are law with us because we receive them as rules of right, and accommodate our forms of procedure to the admission of them.    They are distinguished from principles of law elsewhere, because their force is acknowledged only in peculiar Courts, and the forms of what are called their common law Courts do not furnish the means of enforcing them.    We have adopted as law the equitable principle, that, where a creditor has the means of compelling payment from the principal debtor, and by his own act gives it up, he thereby discharges the surety, and this even when the debt is secured by a joint mortgage or judgment against both : Neff's Appeal, 9 *W. & Ser.* 36.

It is therefore apparent that this defence must be permitted; and we must so far change the ordinary rules of this procedure as to let it in.    For this purpose, we must allow these defendants to sever in their defence, so that each may present the case on his own grounds.    But the plea of payment by the surety is utterly incongruous; for if it be found in his favor, it makes an absurd record, with a judgment against one defendant, when the other has proved that the debt was paid.    The defence is purely an equitable one, and it should be pleaded specially, and then, on the plea being found true, the record will show that, on equitable principles, the judgment against one defendant and in favor of the other is right.    This matter has not been assigned for error, and we mention it only that such blunders may not be repeated.    Such a plea should aver the suretyship, and set out the facts necessary to show that in equity the surety is released.

The parties having severed, the plea of the surety stands in the place of a bill in equity to enjoin proceedings as to him, in which

this plaintiff and the other defendant would be the defendants, and both would be interested to defeat the bill of the surety. Such are their respective positions, in another forum, on the issue tendered by this plea. Joseph Bodey is, in effect, a party to the issue on the opposite side to Henry Bodey's administrators, and is not bound for the costs which they incur by such an adversary position, and on equitable principles, and under our decisions is a competent witness for them : Mevey v. Matthews, 9 *Penn. St. Rep.* 112 ; Talmage v. Burlingame, *Id.* 21.

In this adaptation of a common law form to the principles of equity, we do nothing more than carry out a principle which has the sanction of innumerable precedents. There should be no forms of proceeding so inflexible as not to yield to the necessary demands of unforeseen circumstances; otherwise they will often cross the purposes which they were intended to serve.

There can be no kind of business without its forms, and they all have two elements of adaptation that are to be taken into the account in estimating their value; first, that they may secure the purposes for which they were designed, without which they would be in a measure useless : and second, that they be conformable to the education, habits, and customs of those by whom the business is to be conducted, without which the business must suffer by frequent mistakes and delays. Those forms, which are the product of long experience, and have grown up with a particular business, are generally the best, in their place, because they have adapted themselves, by a sort of spontaneous developement, to the business to which they apply, and constitute the habits of those engaged in it; and great and sudden changes in such customary forms must always be attended with serious evils.

On the other hand, such forms may, in the hands of unskilful and over-methodical practitioners, assume a fixedness of character that will prevent the improvement and developement of the business to which they belong, in which case they become an encumbrance demanding a sweeping reform. Of this character were many of the forms of the English common law. They very early became fixed to such a degree that they refused to yield to the demands of common justice, and the rule, that for every wrong there is a remedy, became a mere mockery; and from this arose the immense jurisdiction of the English Chancellor. The generous infusion of equity principles that pervades our law, demands that our forms should be more flexible, while it does not release us from the caution, with which all changes should be made, where the customs and rights of many are concerned.

This bond was originally given by one Samuel Thomas, and the plaintiff holds it by assignment, and the defendants, Joseph and Henry Bodey, appear on its face to be both principal debtors. From these facts the plaintiff raised two questions; first, that there

[Holt *v.* Bodey.]

was not sufficient evidence that Henry was a mere surety, as to the plaintiff; and second, that, if the fact be so, the plaintiff did not know it. As we think that there was not sufficient evidence to justify a finding of these facts against the plaintiff, it becomes necessary to inquire whether they were material to the defendant's case. Elsewhere it has been considered material under some circumstances, 3 *Paige* 650.

The general principle is, that a surety, on paying the debt, is entitled to be substituted to all the liens and other securities which the creditor holds against the principal debtor; a right, which is enforced, whether the surety is bound in one instrument with the principal or not; which is transmitted to the surety's creditors, where the claim is used so as to disappoint their liens; and which, if not enforced, leaves the liability of joint defendants to be controlled by the caprice of the creditor, and not by rules of law. Neimcewicz *v.* Gahn, 3 *Paige* 614; Davenport *v.* Hardeman, 5 *Georgia Rep.* 580; Morris *v.* Evans, 2 *B. Monroe R.* 84; Neff's Appeal, 9 *W. & Ser.* 43; Ebenhardt's Appeal, 8 *Id.* 327; Neff *v.* Miller, 8 *Penn. Rep.* 348; Moore *v.* Bray, 10 *Id.* 519; Watts *v.* Kinney, 3 *Leigh* 372.

From the surety's right of substitution, his right of discharge, when the substitution has been rendered fruitless by the act of the creditor, follows as a corollary. We give up our own right against him, whose countervailing right we have destroyed.

Now it matters not whether the instrument shows that the debtors stand to each other in the relation of principal and surety or not. The object of the instrument is to show their relation to the creditor, and ordinarily it imports no more. The question of their relation to each other remains an open one; and hence, the admission of parol evidence to answer it does not violate the rule by which such evidence is not allowed to vary the legal import of a written instrument. It is the fact of this relation, with or without the creditor's knowledge of it, that gives the right of substitution. The right is inherent in the transaction, if the relation exists. If it does not appear, the creditor is expected to be ignorant of it, and should act accordingly. While the law enforces the payment of his claim, it does not make his will the law of the contract, and allow him to shift the burden from the property of one defendant to that of the other at his pleasure. Nor may he blindly act so as to affect the rights of others, and then excuse himself by saying he did not know. He should not in any way discharge one of his joint debtors without the consent of the other; for that other has an interest in that act. The knowledge of the plaintiff of the fact of suretyship was therefore immaterial.

The Court below could not properly affirm the sixth point of the plaintiff; but they instructed the jury that the question was, did the release so operate as to discharge from the lien of the judg-

ment, property which was then available for the satisfaction of the judgment, and to what extent? This was quite as favorable as the plaintiff had a right to ask; and, when the Court added, "to the extent that said release did not discharge such property, the plaintiff may recover," when they added this, they conceded too much to the plaintiff: for it was telling the jury that, though the property released would have satisfied the judgment, yet if there is any which can still be made available, the surety is, *pro tanto*, not discharged. Such a rule throws all the risks arising from the plaintiff's act, and the uncertainty of the evidence and the fallibility of the jury, on the surety, instead of on the party whose act gave rise to them. If there be still enough of the principal's property left, the creditor need not care that the surety is discharged. If this is doubtful, it was the creditor that made it so, and he should take the risk of it. If he has discharged any of the principal's property, the very least that can be expected of him is, that he should make it perfectly clear that it could not have been made available at all, or not beyond a certain amount; for, by his act, he has prevented the application of the certain test afforded by judicial process.

Judgment affirmed.