# Beaver Trust Company v. Morgan et al., Appellant.

*Principal and surety—Assignment of debt—Transfer of collateral security—Default—Sale of collateral—Application of proceeds to unsecured debt—Value of stock—Evidence—Discharge of surety.*

1. A purchase of a debt is a purchase of all securities for it, whether named or not named at the time of the assignment, unless expressly agreed at the time that they shall not pass.

2. A surety is entitled to every remedy which the creditor has against the principal, to enforce every security and all means of payment, and to stand in the place of the creditor, not only through the medium of the security pledged but even of securities taken without his knowledge.

3. If a creditor releases the principal from the payment of the debt, he thereby releases the surety entirely, but if he releases the principal from a part only, the surety is released only pro tanto.

4. While ordinarily the price obtained for an article in the open market is the best evidence of its value, where a creditor sells a pledged security on default of the debtor and buys it at its own sale and improperly applies the proceeds to a debt other than the one secured, such appropriation casts sufficient discredit upon the bona fides of the sale to warrant a finding that the real value of the security was greater than the price obtained.

5. Where collateral pledged as security for a note upon which there is a surety is applied by the holder of the note to the payment of another obligation of the maker, without the consent of the surety, the surety is relieved from liability on the note pro tanto.

6. Where in such case the value of the collateral was sufficient to discharge the note and such collateral was sold and the proceeds applied to the payment of another obligation of the maker of the note, the debtor could not thereafter successfully claim any part of the proceeds of a sheriff's sale of the real estate of the surety, although his judgment was prior to that of other creditors.


Argued Oct. 2, 1917.  Appeal, No. 31, Oct. T., 1917, by The Peoples National Bank of Rochester, Pa., from order of C. P. Beaver Co., June T., 1916, No. 220, sustaining exceptions to sheriff's return of distribution of proceeds of a sheriff's sale, in case of Beaver Trust Company v.

Guy H. Morgan, The Peoples National Bank of Roches-
ter.   Before BROWN, C. J., MESTREZAT, STEWART, FRA-
ZER and WALLING, JJ.   Affirmed.

Exceptions to return of sheriff, showing distribution
of the proceeds of a sheriff's sale.   Before BALDWIN, P. J.
The opinion of the Supreme Court states the facts.
The court sustained the exceptions.   The Peoples Na-
tional Bank of Rochester, Pa., appealed.

*Error assigned* was in sustaining the exceptions.

*A. P. Marshall,* with him *Chas. R. Eckert,* for appel-
lant.

*William A. McConnel,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 7, 1918:
This dispute arises out of the distribution of the pro-
ceeds of the sheriff's sale of the real estate of one J. W.
Jack.   The original transaction out of which the contro-
versy arises presents no unusual feature; nor are the
facts relating to the subject in dispute.   On the 7th
March, 1911, the Monaca National Bank loaned to M. L.
Jack the sum of $1,450, taking as security therefor a
judgment note signed by M. L. Jack and J. W. Jack in
like amount, payable at four months, and also fifteen
shares of the capital stock of the Rochester Trust Com-
pany owned by M. L. Jack, as collateral.   The loan was
renewed at regular intervals until 15th April, 1913, on
which day judgment was confessed and entered upon the
single bill given by way of renewal in favor of Robert C.
Campbell, cashier, and against M. L. Jack and J. W.
Jack, reduced later in amount to $1,425.   On 4th Decem-
ber following the obligation was again renewed, but in
somewhat different form, the change not affecting, how-
ever, in any way the legal status of the parties, except to

make J. W. Jack guarantor instead of surety, leaving the contract in all other respects the same as before. On March 4, 1916, the Monaca National Bank sold, assigned and set over to the Peoples National Bank all its right, title and interest in the renewal note, and as part of the transaction turned over to the said bank the fifteen shares of Rochester Trust Company stock which M. L. Jack had deposited with it as collateral to the original loan, and assigned to said bank the judgment it had entered on the single bill of M. L. and J. W. Jack. Meanwhile, 18th February, 1916, M. L. Jack had obtained a loan from the Peoples National Bank of $1,780 on his own obligation, containing a power of attorney for the confession of judgment. As collateral security for this loan M. L. Jack pledged the fifteen shares of Rochester Trust Company stock that he had previously pledged to the Monaca Bank. These shares having come into the possession of the Peoples Bank, upon default of payment by M. L. Jack, the Peoples Bank, as it had a right to do under its contract, on 20th June, 1916, sold the fifteen shares of stock of the Rochester Trust Company for the sum of $1,290, and applied the same as a credit to the $1,780 note of M. L. Jack.

J. W. Jack, the surety, was the owner of certain lots of ground in the Borough of Rochester, in Beaver County, on which there was a first lien of $3,645.54 in favor of the Beaver Trust Company; next in priority was the lien of the judgment entered by the Monaca Bank to No. 215, June Term, 1913, against M. L. and J. W. Jack, for $1,450, for the loan to M. L. Jack, for which J. W. Jack was surety. Several other liens followed in their order. This was the situation when execution process was issued on the first lien by virtue of which the real estate of J. W. Jack was, on the 3d June, 1916, sold by the sheriff for $5,200. The sheriff in his return of sale applied out of the purchase-money $3,645.54 to the judgment held by the Beaver Trust Company, and, without discoverable

reason, awarded the balance of the fund to the party from whom J. W. Jack had acquired title. Upon exceptions filed by the subsequent lien creditors, the court set aside so much of the return, and proceeded to a hearing in which the facts we have heretofore recited were developed. Disallowing entirely distribution to the judgment transferred to the Peoples National Bank by the Monaca Bank, next in order of priority, the court awarded the balance remaining to the subsequent lien creditors in their order and decreed accordingly. The appeal is by the Peoples National Bank from this decree.

It is quite clear that this bank stock, while in the hands of the Peoples National Bank, was as much impressed with its collateral character as when in the hands of the Monaca Bank. When the Peoples National Bank purchased from the Monaca Bank the obligation of the Jacks, it acquired as well, by operation of law, whatever was pledged for its payment, the same to be held and used, however, for no other purpose than that for which it had been originally pledged. A purchase of a debt is a purchase of all the securities for it, whether named or not at the time of the assignment, unless expressly agreed at the time they shall not pass. Foster v. Fox, 4 W. & S. 92. On payment of the note by the surety, the latter would be entitled to the collateral. Neither the bank nor its assigns, nor the surety, could use the collateral for other purpose than that for which it had been expressly pledged. It made no difference how many obligations the Peoples National Bank held against J. W. Jack, it was beyond the power of the latter to subject the stock to other collateral liability, to the prejudice of the surety, J. W. Jack, than that for which it was available for the latter's protection. "For a surety," as said in Hawk v. Geddis, 16 S. & R. 23, "is entitled to every remedy which the creditor has against the principal, to enforce every security and all means of payment, to stand in the place of the creditor, not only through the medium of the se-

curity, but even of securities taken without his knowledge. He has the right to have these securities transferred to him, and avail himself of them, though there was no stipulation for that purpose." The application of the proceeds of the sale of this pledged stock to the individual indebtedness of M. L. Jack was a palpable misapprehension. It was applicable to the note that the bank had acquired from the Monaca Bank on which J. W. Jack was surety and no other. The legal effect of this misapplication was to release J. W. Jack from liability on the note pro tanto. In Neff's App., 9 W. & S. 36, the law governing in such cases is thus stated in the opinion by KENNEDY, J.: "So if the creditor releases the principal from the payment of the debt, he thereby releases the surety entirely, but if he release the principal from a part only of it, he only releases the surety pro tanto; and there is not even a shadow of reason why it should be considered a release of any more. So if the creditor give up to the principal, or release a security which he has obtained from him for the whole of the debt, it will operate as a release or discharge of the surety from all liability as such; but if the security released be only for part of the debt, the surety will only be released pro tanto. The ground upon which the relinquishment or negligent losing of a security taken of the principal debtor by the creditor for the whole or part only of the debt is held to be a release of the surety either for the whole or pro tanto as the case may be, is, that the surety upon payment of the debt to the creditors is entitled to the benefit of all securities which the creditor has, that he could have rendered available against the principal debtor, and if any of those securities have become lost, or have become lessened in value, in consequence of the neglect or default of the creditor, the surety's liability to the creditor will be diminished to that extent." In Holt v. Bodey, 18 Pa. 207, there is not only a distinct and express reaffirmance of the doctrine

stated in the case above cited, but express authority may there be found for holding that the right of the surety, in such case as we have here, "is transmitted to the surety's creditors where the claim is used so as to disappoint their liens." The facts of the present case clearly bring it within these rulings, as the learned judge of the court below held. The Peoples National Bank had a perfectly legal right to sell the pledged stock; but it had no right in law or equity to apply as a credit the proceeds of sale to any other indebtedness than that for which it was originally pledged, namely, that which was represented by the note assigned to it by the Monaca National Bank upon which M. L. Jack was principal and J. W. Jack but surety. As a legal result of its misapplication, J. W. Jack was thereupon discharged as surety to whatever extent he could have made the stock available against the principal debtor. The court finds as a fact that the value of this stock was the full equivalent of the note. This finding is excepted to, but we see no sufficient ground on which to disturb it. The Peoples National Bank bought the stock at its own sale. We see in the subsequent misappropriation of the proceeds, as the court below must have done, quite enough to cast discredit upon the bona fides of the sale. Ordinarily the price obtained for an article in the open market is the best evidence of its value, but there are cases in which it is not the best or only evidence, and this is one of them. What the surety in this case lost was not to be measured by market value at any particular time, but by its value to the surety for his indemnity. The court below held that its real value was sufficient to extinguish the entire indebtedness for which the surety was liable, and the evidence fully warranted the conclusion.

It results, from what we have said, that with the extinguishment of the debt the collateral judgment against the surety fell, and distribution to it was properly refused.

The decree is affirmed.