## In re Bloomfield Trust Company et al.

*Bert H. Smyers,* for exceptant; *Joseph A. Richardson,* contra.

SMITH, J., April 29, 1933.—These cases came before the court upon exceptions to the accounts of William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, filed by the Pennsylvania Marble & Mosaic Tile Corporation. There is no dispute on the facts, and because of the close relation of the two cases they will be considered as one for the purpose of this decision.

The Secretary of Banking, under authority of the Banking Act of June 15, 1923, P. L. 809, took possession of the business and property of the Bloomfield Trust Company and the Garfield Bank, both of Pittsburgh, on September 26, 1931.

The exceptions were taken to the partial account filed and relate to the manner in which the Secretary of Banking, acting through his deputy, treated an account of $3,000 in the Bloomfield Trust Company, as will more particularly appear from a full statement of the facts.

On July 11, 1929, the exceptant opened a checking account in the Bloomfield Trust Company and shortly afterward borrowed from that institution a sum of money. On the ledged sheet of that account the following notation was stamped:

"Stop — Look — Listen — Standing balance of $5,000 to be kept in this account."

This stamp continues to the second sheet of the ledger upon which the first entry is October 5, 1929. On this sheet, in typewriting, is the following:

"Do not pay any checks on this account unless you see me or Mr. Booth."

The testimony shows that this notation was made on the ledger sheet by John J. Dauer, in charge of the bank under Mr. Booth, who was the active president of the Bloomfield Trust Company. After November 1929, no further stamp appears upon the general ledger sheet.

On October 8, 1929, a new account appeared on the books of the Bloomfield Trust Company to the credit of "Pennsylvania Marble & Mosaic Corporation, special account." The initial deposit was $3,000. Upon the ledger sheet of this account is written:

"This amount to be held in this account for loans borrowed here."

The assistant treasurer of the exceptant company testified that this account was not opened by the exceptant and that the first notice the company had of the opening of such an account was given him by the president of the bank while he was in that institution one day making a deposit, when the president warned him not to overdraw the company's account "as they had taken $3,000 from this account for collateral against our loan." There is no dispute that the "special account" was opened by an officer of the Bloomfield Trust Company without any check or order of the exceptant company, without its consent or knowledge, and with funds charged against the general account of the exceptant under the direction of an officer of the bank. No passbook was issued on the "special account." No checks were ever drawn upon it, and no signature card was filed. Whatever may have been the doubtful legal authority for the creation of this new account and the initial deposit of $3,000 in it by an officer of the bank, no objection was made to this transfer by the exceptant after notice had been given, and there can be no doubt that it was the intention of all parties concerned to treat the said "special account", with its $3,000 deposit, as collateral after the opening of the "special account" on October 8, 1929.

From time to time after the opening of this account on October 8, 1929, the exceptant borrowed sums from the Bloomfield Trust Company and paid or renewed its notes, and on September 15, 1931, the indebtedness of the exceptant to the Bloomfield Trust Company was $4,000. On that date the note evidencing this amount of indebtedness was sold to the Garfield Bank. A notation was made on the ledger sheet to that effect. The Garfield Bank paid the Bloomfield Trust Company the face amount of the note and accrued interest at the time of the purchase. At the time of the closing of the banks the exceptant company had on deposit in the general account in the Bloomfield Trust Company the sum of approximately $22.50 and in the "special account" the sum of $3,000 before referred to.

The exceptions to the accounts go to the status of this $3,000 deposit and attack the validity of the transfer by the Bloomfield Trust Company of the $4,000 note to the Garfield Bank. The record reveals the fact that the board of directors of the Bloomfield Trust Company and the Garfield Bank consisted of the same individuals. It has been argued by exceptant's counsel that this fact, standing alone, is evidence of the fraudulent nature of the transaction by which the $4,000 note was transferred from the Bloomfield Trust Company to the Garfield Bank. The court is not of such an opinion. There is no question that the Garfield Bank paid full consideration for the note transferred to it and that the transaction was entirely fair and regular on the face of it. There is no evidence in the case which would indicate that the transfer by the Bloomfield Trust Company to the Garfield Bank of the $4,000 note was made in contemplation or because of insolvency. The mere fact that the directors of

342

both corporations were the same does not of itself warrant the inference of fraud, nor would it be sufficient justification for disturbing the contract: South Side Trust Co. v. Washington Tin Plate Co., 252 Pa. 237.

The other important question raised by the exceptions goes to the status of the $3,000 deposited in the "special account." The court is of the opinion that the $3,000 in the "special account" was collateral upon which the Bloomfield Trust Company would have a lien until the exceptant's indebtedness was paid. This was clearly the intention of the parties subsequent to the notification of the company by the proper bank official of the creation of the new account. No other inference can be drawn from the failure of the company or any of its officials to protest the action of the bank officers. On the day of the transfer of the exceptant's note of $4,000 by the Bloomfield Trust Company to the Garfield Bank for full consideration, the Bloomfield Trust Company had collateral of $3,000 in a special account, which amount could not be used by the exceptant for any other purpose. The negotiation of the note to the Garfield Bank would not divest the "special account" of its character as collateral. It is a long-established and generally accepted rule that an assignment of a debt carries with it all securities held by the assignor for the same debt, unless otherwise expressly agreed, even though the assignee has no knowledge of the existence of the security: Beaver Trust Co. v. Morgan et al., 259 Pa. 567; Steiner v. Girard Trust Co., Trustee, et al., 12 D. & C. 761. Applying that rule to the facts in this case, the assignment by the Bloomfield Trust Company to the Garfield Bank of the $4,000 note carried with it the collateral of $3,000 held by the Bloomfield Trust Company in its "special account." This money should have been transferred by the Bloomfield Trust Company to the Garfield Bank, but since it was not done the Secretary of Banking will be directed to make that transfer now.

The next question to be considered is whether the Secretary of Banking, having been so directed to transfer the collateral to the Garfield Bank, shall pay out of the funds of the Bloomfield Trust Company the sum of $3,000, or whether he shall pay to the Garfield Bank only such dividends as may be declared to depositors. There can be no doubt that the failure of the Bloomfield Trust Company to transfer the collateral to the Garfield Bank created a trust but the right of the Garfield Bank to priority over the other creditors in the distribution of the assets of the Bloomfield Trust Company depends upon its ability to show that the property in possession of the Bloomfield Trust Company at the time it closed its doors was obtained as a result of the conversion and is therefore subject to a trust in its favor. The exceptant must trace the proceeds received from the conversion and identify them as contained in some specific fund or property in possession of the Bloomfield Trust Company at the time it was taken over by the Secretary of Banking: Mehler's Appeal, 310 Pa. 25.

Between October 8, 1929, and the date of the closing of the bank, the Bloomfield Trust Company had on deposit in local and New York banks a sum more than sufficient to cover the amount here involved. It had in its banking house cash in the sum of $1,000. There is no proof offered that the Bloomfield Trust Company was insolvent at the time possession was taken of it. In view of the practical administrative difficulties, the intricacies of bookkeeping and accounting systems, and the impossibility of generally identifying currency when once deposited in a bank, it would seem to be the sound rule to regard "all bank credits and all currency as one treasure chest, so that a claimant need only show that his money was converted into a credit with a bank or into cash, and that the trustee always thereafter had enough 'cash', in the broad sense, to meet the

trust obligation." This also seems to be the view finally adopted by Shippen Lewis, who discusses the matter at some length in his article "Tracing Mingled Trust Funds", appearing in the March issue of the Pennsylvania Bar Association Quarterly. With this view the court is in hearty accord. It is the opinion of the court that the $3,000 deposited in the "special account" was collateral security for the $4,000 note assigned by the Bloomfield Trust Company to the Garfield Bank; that the collateral referred to should have been transferred to the Garfield Bank at the same time the note was assigned; that, since the bank officials failed to make that transfer of collateral, the Secretary of Banking should be directed to make the transfer now; that the conversion by the Bloomfield Trust Company of the collateral created a trust to the extent of $3,000 deposited in the "special account"; that the $3,000 deposited in the "special account" became mingled with the general funds and cash of the Bloomfield Trust Company, including credits in other banks; that the exceptant company as trustee to the extent of the collateral is entitled to priority over other creditors of the Bloomfield Trust Company; and that the full amount of $3,000 should be transferred by the Secretary of Banking, or his duly authorized deputy in actual possession of that bank, from the funds of the Bloomfield Trust Company, now in his control, to the Garfield Bank so that the exceptant may there receive credit for said $3,000 as against his obligation of $4,000.

*Order*

April 29, 1933, the exceptions filed in each case are sustained and it is ordered and decreed that the Secretary of Banking, or his duly authorized agent, transfer from the funds of the Bloomfield Trust Company, now in his possession, to the Garfield Bank, now in possession of the Secretary of Banking, the sum of $3,000, said $3,000 representing a deposit in the "special account" of the exceptant corporation in the Bloomfield Trust Company, which account was held by it as collateral for the $4,000 note transferred by the Bloomfield Trust Company to the Garfield Bank, in accordance with the opinion filed in this case.

From William J. Aiken, Pittsburgh, Pa.