Royal E. Robbins, Daniel F. Appleton, E. C. Fitch, Francis R. Appleton, and Royal Robbins, Copartners trading as Robbins & Appleton, Appellants, *v.* Joseph W. Robinson and Frank M. Williams, Arthur H. Williams, Jr., and David W. Kelly, Administrator of Arthur H. Williams, deceased; the said Arthur H. Williams, Frank M. Williams and Arthur H. Williams, Jr., formerly trading as Arthur H. Williams & Sons.

*Guarantors—When extension of time will not discharge.*

The ordinary rule that a creditor who gives a binding extension of time to his debtor thereby discharges the surety does not apply where the agreement of suretyship specifically provides for such renewals.

*Surety—Discharge of.*

Any material variation of the contract between the creditor and the debtor will discharge the latter's surety whether he is injured thereby or not, as he has a right to stand on his own contract strictly as he made it. Release or loss of mere securities by the creditor will only discharge the surety to the extent he is injured thereby.

*Novation—Depends on facts and circumstances.*

Where creditors gave up notes of a limited partnership debtor and took new notes from a corporation which succeeded the same, whether or not the transaction amounts to a novation and discharges the debtor depends on the facts and circumstances, as showing whether they gave up the original debtor or merely treated the notes of the new company as means of payment, without intending to discharge the limited partnership.

*Guarantors—Not essential that debtor be legally bound.*

Where the defendants guarantee to protect bills of a limited corporation, it is not essential that the debtor should be legally bound, and therefore it is not material whether the provisions of the act of May 10, 1889, P. L. 183, providing that no liability greater than $500 shall bind the association unless reduced to writing and signed by at least two members, have been complied with or not.

Not decided whether the statute is mandatory when all the managers in fact authorize the debt, though not in writing; or whether any one but the association itself can raise the objection.

*Words and phrases—" Payment "—" Protect a bill "—Contract of guaranty.*

Where plaintiff agreed to extend to a dealer a line of credit not to exceed $40,000, to extend over a period of four years, with the understanding that it should be reduced at the rate of $10,000 each year, and further

agreed to accept notes of said dealer in payment of statements rendered monthly, further agreeing to renew or extend said notes in consideration of a guaranty by others, and defendants indorsed on said agreement that they " guaranteed to protect any bill " of said dealer: *Held,* (1) that the word " payment " with reference to notes of the dealer meant a temporary and conditional settlement, and the liability of the guarantor was not discharged by the acceptance of notes of the debtor, and (2) the expression " guaranteed to protect any bill " means to be answerable for its payment and not merely that a note should be given by the debtor for it.

Argued April 2, 1896.  Appeal, No. 162, Jan. T., 1896, by plaintiffs, from judgment of C. P. No. 2, Phila. Co., June T., 1894, No. 686, of nonsuit.  Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

·Assumpsit for goods sold to the Philadelphia Optical & Watch Co., Ltd., upon written guaranty.  Before SULZBERGER, J.

The plaintiff offered in evidence the following agreement :

We hereby agree to extend The Philadelphia Optical & Watch Co., Limited, a line of credit not to exceed Forty-Thousand Dollars ($40,000.00), upon condition that Jos. W. Robinson and A. H. Williams & Sons go their security for that amount.

˙ We do further agree that said Forty-Thousand Dollars ($40,000.00) line of credit shall extend over a period of Four (4) Years, with the understanding that it be reduced at the rate of Ten-Thousand Dollars ($10,000.00) each year paid in quarterly payments of Two-Thousand Five Hundred Dollars ($2500.00) every three (3) months.  Distribute $2500 on notes as they fall due.

We further agree to accept a Note, or Notes, of the said Philadelphia Optical & Watch Co. Limited, in payment of our statement rendered about the first of each month for all goods bought during the preceding month, granting the usual Five Per cent Thirty-Days' Discount from statement rendered in consideration of the fact that our Notes bear legal interest. (Six-Percent.)

We further agree to renew and extend any, or all, Notes that may fall due provided the money owed us by The Philadelphia Optical & Watch Co. Limited does not amount to more than the Forty-Thousand Dollars ($40,000.00) above mentioned, or

the amount it may have been reduced to in the meantime according to contract.

We accede to above in consideration of the subjoined guaranty and payment for first bill of $20,000, one half cash; all future purchases exceeding the credit to be paid for in cash.

ROBBINS & APPLETON,
By F. R. A.

Dated September 24, 1890.

Having carefully read above contract, we guarantee to protect any bill The Philadelphia Optical & Watch Co. Limited may buy of Robbins & Appleton to an amount not exceeding Forty-Thousand Dollars ($40,000.00), provided said liability of The Philadelphia Optical & Watch Co. Limited be reduced at the rate of Ten-Thousand Dollars ($10,000.00) a year, so that for one year from signing of Articles we are liable to said Robbins & Appleton, for goods purchased by the Philadelphia Optical & Watch Co. Limited, to the extent of Forty-Thousand Dollars ($40,000.00). After the first year shall have elapsed and from then on until the second year shall have elapsed, we are liable only for Thirty Thousand dollars ($30,000.00), after the second year shall have elapsed and until the end of the third year, we are liable only for Twenty Thousand Dollars ($20,000.00), and after the third year on until the fourth year shall have elapsed, we stand liable only for Ten Thousand Dollars ($10,000.00) after which time we will not agree at present to hold ourselves responsible.

JOS. W. ROBINSON,
ARTHUR H. WILLIAMS & SONS.

The other facts sufficiently appear in the opinion of the Supreme Court.

The court entered a compulsory nonsuit, in the following opinion :

The plaintiffs, in September, 1890, made a contract with a limited company called the Philadelphia Optical and Watch Company, Limited, to sell them goods, giving them a credit not to exceed $40,000, which was to be paid on certain terms. One of the terms was that the sellers would agree to accept a note or notes of the Philadelphia Optical and Watch Company, Limited, in payment of the statement rendered about the first

of each month for all goods bought during the preceding month.

When those goods were taken according to the terms of the contract, the liability of the defendants on account of the receipt of the goods was gone, and, by the contract, the liability of the defendants was only on the promissory notes they had given, since the agreement was explicit that the promissory notes should not be merely in settlement, but in payment, of the other obligation. That other obligation, arising out of the receipt of the goods merely, is therefore at an end.

Then when the plaintiffs had these promissory notes, they had a contract also with the defendants that those promissory notes, should be paid subject to the provisions of these contracts. It appears that the plaintiffs and the Optical Company dealt with each other in such a way that they treated everything that was done as payment of those notes. For two notes of $2,500 they took the notes of third parties, entirely unknown, or presumably unknown, to the defendants; at all events, there is no evidence to show that the defendants knew the parties, and they deliberately handed over these notes, which were the obligations themselves. The obligation being thus as to the primary debtor was, a fortiori, extinguished as to the surety.

What, then, was the difference between that transaction and the other transaction by which the plaintiffs abandoned the obligation of the company limited, and took the obligation of the company incorporated? Mere similarity in the names, or even in the persons of the corporators, even identity of the names and persons of the corporators will not suffice to overrule the legal position of the incorporated company, which is a legal person entirely different from the persons of the partners. However injurious it may seem on some occasions to permit persons to associate themselves together as a corporation, and thus escape individual liability, it is in pursuance of the distinct policy of the law that this may be done, and we cannot thus collaterally and indirectly give to the incorporation any other effect than the fullest effect which the law gives to it.

Keeping these principles in mind, it seems difficult to see what the plaintiffs have to complain of. At most it amounts to this : That on a certain day, in 1892, the plaintiffs had the notes. of the company limited, upon which they had the security of the defendants, that these notes were unjustifiably obtained

from the plaintiffs, and that therefore, under the reserved equity powers of the law courts of Pennsylvania, the notes so given up may be sued on as if they were still in plaintiffs' possession. In my opinion, unless plaintiffs are in the position to sue upon the surrendered notes, they have no case at all. They would be in the position to sue on those surrendered notes if they had given them up in July, 1892, in consequence of fraud, accident or mistake. In that event they would, in the contemplation of the chancellor, be the real owners of those notes, though they were in the maker's or indorser's actual possession, and could bring suits and recover upon those notes. But having surrendered those notes, which were of themselves an independent obligation, the surrender of that obligation is its destruction, unless an equitable reason appears to the contrary, and I cannot in all the evidence submitted, see any such reason, and therefore grant the motion for a nonsuit.

*Error assigned* was refusing to take off nonsuit.

*Jos. Savidge* and *E. Hunn Hanson*, for appellants.—The limitations imposed upon partnership associations under the act of June 2, 1874, P. L. 271, do not bind strangers dealing with them : Pittsburg Melting Co., Ltd., v. Reese, 118 Pa. 355 ; Walker v. Keystone Brewing Co., 131 Pa. 546 ; Bank v. Lauth, 143 Pa. 53 ; McLaughlin v. Centre Mining Co., 10 C. C. 533.

If the securities surrendered are valueless or have been surrendered for others of greater value, the guarantor has not suffered and cannot be held to claim a discharge from his contract on such account: Neff's Appeal, 9 W. & S. 36 ; Haedrich v. Wright, 35 Beav. 133.

*B. Frank Clapp* and *David W. Sellers*, for appellees.—The sureties were discharged : Smith v. United States, 2 Wall. 219 ; Bensinger v. Wren, 100 Pa. 500 ; Bank v. Bank, 155 Pa. 20 ; 2 Parsons on Contracts, 18 ; Van Horn v. Dick, 151 Pa. 341 ; Dupee v. Blake, 148 Ill. 453 ; Lancaster v. Barrett, 1 Super. Ct. 9.

The limited partnership debtor was not bound by the contracts for purchase inasmuch as they were not reduced to writing and signed by at least two members : Act of May 10, 1889,

sec. 1, P. L. 184 ; Pittsburg Melting Co. v. Reese, 118 Pa. 355 ; Walker v. Keystone Brewing Co., 131 Pa. 546 ; Bank v. Lauth, 143 Pa. 53 ; Andrews v. Youngstown, 7 C. C. 67.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896 :

The learned judge below gave too narrow and strict a con·· struction to the word " payment " in the agreement of the plaintiffs with the debtor, the Watch Company, Limited.   According to this construction all that the guaranty of defendants amounts to is that when the Watch Company, Limited, should buy a bill of goods they should give a note for it, and that should end the guarantor's liability.   The futility of such an immaterial guaranty is manifest, and the whole tenor of both writings shows that such was not the intent of the parties.   The first agreement for giving the credit does state that plaintiffs agree " to accept a note or notes of the said company in payment of our statement rendered about the first of each month," etc., but that this should be construed to mean " in temporary and conditional settlement " is not only in accordance with the presumption of law when notes are given for a debt, but is also shown to be the meaning of the parties by the further provision for a renewal or extension of such notes, and the specific agreement as to how much the actual payment shall be when they fall due.

But a conclusive reason against the view of the court below is that the defendant's guaranty is not of the notes at all but of the debt.   The language is, " Having carefully read above contract we guarantee to protect any bill the Watch Company may buy " etc.   To " protect a bill " for the seller means in any. reasonable business construction to be answerable for its payment, not merely that a note should be given by the debtor for it, or that such note or its renewal should be paid, but that the bill should be paid.

The notes not being the thing guaranteed, but only evidence or in a certain sense security for the thing guaranteed i. e. the debt, a change of notes either by renewal or extension by the same makers, or by acceptance of notes of other makers, whether the new corporation, or the " trade paper " so called, cannot of itself as a purely legal consequence, discharge the guarantors.   Two rules on this subject are well established, first that any material variation of the contract between the

creditor and the debtor will discharge the latter's surety whether he is injured thereby or not, he has a right to stand on his own contract strictly as he made it; secondly that a release or loss of mere securities by the creditor will only discharge the surety to the extent he is injured thereby.

The contract between the plaintiffs as vendors and the Watch Company, Limited, as purchasers, was for a credit of $40,000 for a period of four years, beginning in September, 1890, with the agreement that the debt should be reduced $10,000 each year. This is the contract which the defendants state that they had "carefully read" and the bills to be bought under which they agreed to guarantee. It does not appear that any change was made in the contract. The purchases now sued for, were made, as we understand, by the Watch Company, Limited, under this contract, and within the time named, in fact, within three months after the date of the guaranty. Nothing therefore appears so far to make the first rule above quoted applicable to the case.

Notes were given by the Watch Company, Limited, and were renewed from time to time. The ordinary rule that a creditor who gives a binding extension of time to his debtor thereby discharges the surety, does not apply to this case because the agreement specifically provides for such renewals. But in July, 1892, the Watch Company, Limited, seems to have suspended operations, turning over its entire assets and business to a new corporation, which assumed its liabilities including the notes due to plaintiffs, and when these notes came due they were apparently renewed in the name of the new corporation as if in pursuance of the prior contract with the Watch Company, Limited. The two companies were of course legally distinct, but the assets of the first were transferred bodily to the second, the same persons to a large extent were concerned in both, and the business seems to have gone on with very little apparent change. How far these appellees were parties to this course of dealing, and to what extent if at all their interests were prejudiced by it is not sufficiently clear to be determined as a matter of law. Under the circumstances these are questions for the jury.

The same reply must be made to the argument that the act of the plaintiffs in giving up the notes of the Watch Company, Limited, and taking those of the Watch Company, Incorporated,

was a novation and discharged the defendants. That depends on the facts, whether the plaintiffs gave up their original debtor and accepted its successor in its place, or merely treated the notes of the new company as evidences and means of payment, without intending to discharge the first company, and without doing any act which would discharge the guarantors by prejudicing their interests. This so far as appears depends on a number of circumstances and a course of conduct which make it a question for the jury.

There remains one question which is not without difficulty. The Watch Company, Limited, was formed under the act of June 2, 1874, P. L. 271, the amendment of May 10, 1889, P. L. 183, to which provides that no liability greater than $500 shall bind the association unless reduced to writing and signed by at least two managers. Whether the orders for goods which created the debt in the present case were signed by two managers or not, does not appear in the evidence, but it is argued for the appellees that the notes not having been shown to have been so signed there was no legal liability of the Watch Company proved, and therefore no such liability on the part of the sureties. Very important questions might arise in view of the purpose of that requirement of the statute being for the protection of the members of the limited partnership, whether it could be treated as mandatory if all the managers did in fact authorize the debt though not in writing, and further whether any one but the association itself could raise the objection, which it has not done in the present case. But it is not necessary to decide either of these questions, as even conceding them to the appellees the latter would not necessarily be relieved of liability.

As already said, the guaranty of the defendants was not of the notes but of " any bill the Watch Company may buy," and its fair meaning is that if the Watch Company should not pay the guarantors would. The plaintiffs showed that the Watch Company did buy, did receive the goods, and had not paid. This made out a prima facie case of breach of the warranty, and called upon the guarantors to show a defense if any they had. It was not essential that the debtor should be legally bound. If the proposed sale had been to an infant, or a married woman prior to the recent enabling acts, and on a guaranty of any bill which either might buy, the vendors had parted

with their goods, the liability of the guarantors would be clear though there was no legal liability of the principal debtor. It is a question of the intention of the parties, and the language of the present guaranty, " to protect any bill the Watch Company may buy," is broad enough to cover any failure of the Watch Company to pay, no matter what the reason, unless it went to the merits of the plaintiffs' claim.

Judgment reversed and procedendo awarded.