# Fidelity America Financial Corp. v. Elkins

*Roderick D. Mathewson,* for plaintiff.
*Lawrence C. Rutenberg,* for defendants.

SURRICK, *J.,* January 30, 1981—This case is an action in assumpsit brought by Fidelity America Financial Corporation against Seymour Elkins and Ruth Elkins, his wife,[1] as sureties of certain financial obligations owed by Elkins-Dell Manufacturing Company, Inc. (hereinafter referred to as principal) to plaintiff.

Pursuant to Pa.R.C.P. 1038, the matter was heard as a civil non-jury trial on April 21, 1980. At the conclusion of the trial and after review of the memoranda of law provided by counsel, we found in favor of defendant and, on April 25, 1980 we issued an order to that effect.

---

1. Ruth Elkins died in 1975 and a suggestion of death has properly been filed of record.

Plaintiff filed exceptions to this order and the matter was submitted to the court on briefs at the argument court on September 15, 1980. After review of the entire matter, we believe that plaintiff's exceptions are without merit.

The facts established at trial were basically these. Defendants, Seymour and Ruth Elkins, entered into an Indemnity and Suretyship Agreement with plaintiff, relative to an accounts receivable financing contract between Elkins-Dell Manufacturing Company, Inc. and plaintiff.[2] These contracts came into effect on October 1, 1959, and pursuant thereto plaintiff, in fact, advanced money to the principal against its accounts receivable. In January, 1960 an involuntary bankruptcy petition was filed on behalf of Elkins-Dell Manufacturing Company and it was adjudicated a bankrupt in May, 1960.[3]

In March of 1961 the trustee in bankruptcy brought an action against plaintiff seeking an accounting of all moneys which it had collected pursuant to its agreement with the principal. In July of 1965 the referee in bankruptcy held in favor of the trustee, declared the agreements to be unconscion-

---

2. These agreements are on the same four-page printed form which is reminiscent of the Form 50 Lease Agreement. In fact, the Bankruptcy Referee found that "each of the agreements is so one-sided in favor of Fidelity, drives so hard a bargain and is so over-reaching as to be unenforceable in a court of conscience." See Exhibit P-2, opinion of Judge Lord, pages 5 and 6.

3. The accounts receivable financing contract warrants that principal will not do such things as suspend business, file a voluntary petition in bankruptcy or for an arrangement, reorganization or for the appointment of a receiver without the consent of plaintiff. It does not, however, discuss involuntary bankruptcy petitions.

able and directed plaintiff to turn over to the bankrupt estate a sum in excess of $27,000. This decision was appealed by plaintiff to the United States District Court for the Eastern District of Pennsylvania which, by opinion of Joseph E. Lord, III, J., dated May 13, 1966, vacated the order of the referee and remanded the matter to the referee for further proceedings not inconsistent with the opinion.

At this point, after the referee's order had been vacated and the matter remanded, plaintiff negotiated a settlement with the trustee. Pursuant to that settlement, plaintiff agreed to pay $7,500 to the trustee for the release of all the estate's claims against plaintiff. Plaintiff attempted to contact defendants by regular mail to offer them an opportunity to involve themselves in the settlement negotiations; however, there is no evidence in this record that plaintiff was successful in notifying defendants in this regard. In fact, Seymour Elkins testified that he had no memory of receiving any correspondence or any other notification on this subject. As a result of the settlement negotiations in which defendants did not participate and of which they had no knowledge, plaintiff paid to the trustee the sum of $7,500. It is this money that plaintiff now seeks to recover from defendants by the instant action.

Plaintiff contends that the court committed an error of law in that it refused to apply the provisions of the Restatement, Security, §115(2), to the instant case. This section of the Restatement provides as follows:

"Section 115(2) Performance of Principal's Duty: When Obligation of Surety Revives . . .

(2) Where the surety is discharged in consequence of performance by or on behalf of the prin-

cipal, and the creditor *under a legal duty* surrenders as a preference or otherwise what he has received from or on behalf of the principal, the obligation of the surety is revived." (Emphasis supplied.)

We agree with the observation in plaintiff's brief that "no case has been found either adopting or rejecting the proposition set forth in paragraph 115(2) of the Restatement of Security." Our research has led to this same conclusion. Even if we were to accept section 115(2) as being the law of this Commonwealth, however, we would still be compelled to conclude that the findings of this court were proper given the evidence presented. We reach this conclusion for several reasons.

Initially, section 115(2) specifically provides that the obligation of the surety is only revived where the creditor "under a legal duty surrenders as a preference or otherwise what he has received from or on behalf of the principal. . . ." In the case at bar, plaintiff was under no legal duty to give $7,500 to the bankrupt estate. Although the order of the referee may have created such a duty, that order was vacated by Judge Lord and the matter was remanded to the referee for further hearings. When plaintiff negotiated this settlement with the trustee, it was under no legal duty to do anything. Thus it cannot now claim the benefit of section 115(2) as against these defendants.[4]

Moreover, we believe that Restatement, Security, § 132, which has been declared to be the law in Pennsylvania, governs the instant case. Section 132 provides as follows:

---

4. Plaintiff concedes that defendants as surety had been discharged by reason of full performance by principal to plaintiff prior to the settlement with the trustee.

"Surrender or Impairment of Security By Creditor

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

As above mentioned, in its letter of January 23, 1979 plaintiff attempted to notify defendants that it intended to hold them responsible as sureties for the then pending settlement with the trustee. There is no evidence that this letter was ever received by defendants[5] nor is there any evidence that plaintiff made any other attempts to notify defendants of the settlement or its effect on them. It is difficult to imagine the factual situation which comes more squarely under section 132(c). It cannot be disputed that plaintiff surrendered or released the security, to wit, the $7,500 paid in settlement. By failing to actually involve defendants in the proposed settlement with the trustee, prior to its execution, plaintiff made it impossible for defendants to ever determine if, in fact, their interest had been reasonably protected. Plaintiff's only successful efforts to locate and inform defendants of the settlement came *after* plaintiff had concluded the settlement and when its claim against defendants had already matured.

The instant case is similar to the case of Girard Trust Bank v. O'Neill, 219 Pa. Superior Ct. 363, 281

---

5. Mr. Elkins testified that at the time this letter was sent he no longer resided at 1042 Blyth Avenue, Drexel Hill, Pa., but rather had moved to New York.

A. 2d 670 (1971). In that case, plaintiff had also taken accounts receivable as security for the debts of a bankrupt principal. Plaintiff then wrote off the large percentage of those accounts receivable and then proceeded to take action against defendants as sureties of the bankrupt corporation. The Superior Court reversed a lower court verdict in favor of plaintiff and held as follows at p. 367:

"In the instant case, however, once Girard took control of the accounts receivable, the sureties had no way of ensuring that such accounts would be collected in a reasonable and nonnegligent manner. Girard, by accepting the accounts receivable held security for the principal debtor and had the duty to preserve it for the benefit of the sureties. If Girard wasted this security then the obligation of the sureties should be reduced to the extent that they were injured. First National Bank & Trust Co. of Ford City v. Stolar, 130 Pa. Superior Ct. 480, 197 A. 499 (1938) and Robbins v. Robinson, 176 Pa. 341, 35 A. 337 (1896). See also cases cited in 35 P.L.E. Suretyship, Section 80."

Under all of the circumstances, we believe that section 132(c) of the Restatement, Security applies to this case and not section 115(2). For the foregoing reasons, we enter the following

## ORDER

And now, January 30, 1981, upon consideration of plaintiff's exceptions to the order of this court dated April 25, 1980, it is ordered and decreed that the said exceptions be and the same are hereby dismissed and the order of April 25, 1980, is affirmed.