First National Bank and Trust Company (Smith, Appellant), *v.* Stolar et al.

Argued September 29, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry C. Golden,* for appellant.

*H. A. Heilman,* with him *Guy C. Christy,* for appellee.

OPINION BY RHODES, J., March 4, 1938:

This controversy originated with defendant's petition to open a revived judgment in favor of the First National Bank and Trust Company of Ford City, the original judgment having been confessed on a judgment note in the amount of $1,800. The judgment was opened, and the subsequent trial resulted in a verdict for defendant. Plaintiff's motion for judgment n.o.v. was refused by the court below, and this appeal by the plaintiff, the receiver of the First National Bank and Trust Company of Ford City, followed.

Error is assigned to the refusal of appellant's motion and the action of the court below in opening the judgment. Appellee's contention is that, with the knowledge of the bank, he signed the judgment note in question as surety, not as maker, and that he was discharged by the bank's unwarranted action with respect to the security held by it for the principal obligation. A review of the underlying facts, which are almost entirely matters of record about which there is no dispute, is necessary in order properly to appraise appellee's position.

At the time of the events upon which the defense is based, the bank was plaintiff in three judgments, entered in the Court of Common Pleas of Armstrong County as follows:

| March 11, 1927 | No. 48, June Term, 1927 .... | $ 600 |
| June 13, 1927 | No. 53, June Term, 1927 .... | $1,800 |
| June 13, 1927 | No. 55, September Term, 1927 | $5,150 |

It will be noted that the last two judgments were entered on the same day. In all these judgments Joseph Stolar and Mary, his wife, were defendants. In the judgment entered on the note in question to No. 53, June Term, 1927, in the amount of $1,800, Joseph Bartek, the present appellee, and Johan Jurica were also defendants. At the time of the entry of the three

judgments, Joseph and Mary Stolar were the owners of two pieces of real estate in Ford City. The judgment entered to No. 48, June Term, 1927, in the amount of $600 was revived to No. 20, June Term, 1932.

On June 13, 1932, the bank accepted a mortgage, dated May 2, 1932, wherein Joseph and Mary Stolar were mortgagors and the bank was mortgagee, in the amount of $5,890, covering the two pieces of real estate in Ford City, upon which the three judgments above mentioned were liens. This mortgage was taken by the bank as full payment and satisfaction of the judgments originally entered to No. 48, June Term, 1927 (revived, as above stated, to No. 20, June Term, 1932), and to No. 55, September Term, 1927. By direction of the bank, the prothonotary of the Court of Common Pleas of Armstrong County satisfied those two judgments of record. As a result the judgment entered to No. 53, June Term, 1927, in the amount of $1,800, in which Joseph Bartek, appellee herein, was a defendant, became the first lien on the real estate of the Stolars.

On June 13, 1932, the date the bank accepted the mortgage above mentioned, it caused a writ of scire facias to issue to revive the lien of the judgment entered to No. 53, June Term, 1927, which was served upon Joseph Bartek, appellee, personally, and, on August 6, 1932, the bank took judgment for want of an appearance so that the judgment was revived to No. 58, September Term, 1932.

On June 16, 1932, the bank filed its agreement in writing to No. 53, June Term, 1927, subordinating the lien of that judgment to the lien of the mortgage.

On March 27, 1936, Bartek filed his petition to open the judgment entered to No. 58, September Term, 1932, the basis of which was that he had signed the judgment note, upon which judgment had been confessed against him originally, as a surety for the Stolars; that the bank knew that he executed said note as surety; and

that he was therefore discharged by the subordination of the lien of the judgment to the lien of the mortgage, without his knowledge or consent. On March 28, 1936, the court granted the rule prayed for, with a stay of proceedings. On June 2, 1936, the two pieces of real estate in question were sold by the sheriff on a writ of fieri facias issued on the bond accompanying the mortgage of $5,890, and appellant purchased said real estate at said sale for $645.86, being costs and taxes.

The two pieces of real estate owned by the Stolars are referred to as the "old property" and the "new property." In order to purchase the new property, the Stolars needed $6,950 which they arranged to borrow from the bank, the transaction being handled for the bank by Mr. Core, its cashier. It was arranged that the loan should be made on two judgment notes in the amounts of $5,150 and $1,800, respectively. The $1,800 note was executed by the Stolars, Johan Jurica, and appellee.

Appellee received none of the proceeds of the note which he signed, and the entire fund realized from the loan was received by the Stolars who turned it over to the person from whom they had purchased the new property.

At the trial it was agreed that the judgment at No. 58, September Term, 1932, should stand as plaintiff's statement of claim, the petition to open the said judgment as defendant's affidavit of defense, and the answer of plaintiff as its reply thereto; and that the issues were such as were raised by the petition to open the judgment and the reply.

Appellant contends first that the defense offered by appellee was insufficient because of the absence of an allegation in the petition, or proof at the trial, of fraud, accident, or mistake, and that appellant's point for binding instructions should have been affirmed or judgment in his favor n.o.v. entered. In this connection

appellant relies on *Germantown Trust Co., Guardian, v. Emhardt (No. 1)*, 321 Pa. 561, 184 A. 457, and *Speier v. Michelson*, 303 Pa. 66, 154 A. 127. In the Emhardt case the alleged parol agreement would have relieved defendant of all personal liability on the written contract, and in the Michelson case the averred parol understanding would have subjected payment of the instrument to certain conditions. In both, the defense interposed would have destroyed entirely the efficacy of the obligation. This is not the situation with respect to the contention of appellee in the instant case. He does not deny his obligation to pay as it existed originally. The basis of his defense is that he became a party to the obligation now held by appellant in a character which imposed certain duties on the bank with respect to him because the bank knew the character in which appellee was bound.

The jury found that appellee signed the note as a surety. The evidence warranted that finding and established the relationship between appellee and the Stolars as that of surety and principal debtors on the $1,800 note. The cashier of the bank was cognizant of this fact at the time of the execution of the note by appellee and its acceptance by the bank. There is also evidence that, when the Stolars were in default in the payment of interest, the bank officials in conferring with appellee treated and recognized him as surety.

Appellant refers to the following clause in the $1,800 note, "This obligation is to be held as collateral security for any debt or liability now incurred, or that may be incurred by the makers hereof to the payee hereof," and argues that under these terms appellee could not be surety. A contract of suretyship is between the principal debtor and the surety. The bank had notice of the existence of this relationship between the parties liable on the obligation, and it was consequently obligated to act with due consideration of the rights of the

surety. 50 Corpus Juris p. 15, §6. In this connection the court below, in its opinion refusing appellant's motion for judgment n.o.v., aptly stated: "The clause in the note in no way affects or changes the agreement between the principal debtor and his surety. When the note was executed the makers were not indebted, nor did they at any time thereafter become indebted, to the bank as joint obligors. The clause in the note is purely for the protection of the bank to secure any present or future joint indebtedness other than that represented by the note." See *Heffner v. First National Bank of Huntingdon,* 311 Pa. 29, 166 A. 370; *New Bethlehem Trust Co. v. Spindler et al.,* 315 Pa. 250, 172 A. 309.

Proof by parol that, as between the Stolars and appellee, appellee was surety only was admissible *(Hull v. Weaver,* 48 Pa. Superior Ct. 290, 292), and the averments and proof of such suretyship did not vary the terms of, or contradict, the note itself. Knowledge of this relationship by the cashier of the bank at and before the execution and delivery of the note was the knowledge of the bank. *National Bank of Bedford v. Stever,* 169 Pa. 574, 32 A. 603.

The next material contention of appellant relates to the bank's right to postpone the lien of the judgment, upon which appellee was surety, to the lien of the mortgage. Appellant concedes that said postponement, on June 16, 1932, gave the bank an advantage superior to that which it had held for a period of five years prior to June 13, 1932, but takes the position that it was entitled to this advantage, even assuming that appellee was actually a surety on the judgment note. This argument is predicated on the proposition that, granting that the satisfaction of the two judgments on June 13, 1932, was final, appellee was not a third party in the sense of one who does some act in reliance upon the record, and was not entitled, under the facts in the instant case, to insist upon any rights given to him by

the action of the bank. But appellant overlooks the relationship of surety, principal debtor, and creditor established by the evidence according to the verdict of the jury. Knowledge of that situation by the bank cast upon it a positive duty to appellee with respect to the preservation of the security for the principal debt. The benefit of any and all security held by the bank for the principal debt inured to appellee, whether obtained at the time of, or after, his assumption of liability, and even without his knowledge. 50 Corpus Juris p. 235, §381; *Beaver Trust Co. v. Morgan et al.*, 259 Pa. 567, 103 A. 367. It is immaterial that the debt for which the mortgage was given was the same debt as that repre- sented by the two judgment liens. Upon the satisfaction of the two judgments, the judgment upon which appellee was surety became a first lien. Cf. *Searight's Estate*, 163 Pa. 222, 29 A. 973. Whether the debts represented by the satisfied judgments were subsisting ones is of no moment to appellee. His contention is that, as surety, he was prejudiced when the bank attempted, by the subordination agreement, not only to regain a security which it had relinquished by the satisfaction of the judgments, but also to improve its lien position, and by which relinquishment appellee's position as surety had been made more secure.

While it is true, as appellant argues, that a surety has no equity superior to the legal obligation undertaken by him, yet the authorities hold that he is discharged by an alteration or change in the original contract, or by an impairment of the securities by the creditor; in the former instance he is discharged entirely, and in the latter to the extent to which 'the security has been impaired. *Robbins et al. v. Robinson et al.*, 176 Pa. 341, 35 A. 337. Appellant loses sight of the fact that the change of position of the bank's liens was effected by the bank only to secure a benefit to itself, namely, a loan from the Reconstruction Finance

Corporation. The cases of *Hunsberger v. Perkiomen National Bank,* 108 Pa. Superior Ct. 443, 164 A. 839, and *Commonwealth v. Baldwin Bros. Co. et al.,* 122 Pa. Superior Ct. 403, 186 A. 242, cited by appellant, are not in point. Appellee is not seeking to enforce subrogation in the case at bar, although it might have been his ultimate procedure had he been compelled to pay according to the original understanding and position of the parties. The facts in the case at bar did not proceed to the stage involved in the two cases cited; and it is clearly the law that an impairment of the security for the original debt discharges the surety pro tanto, although, at the time such impairment took place, the surety was not in a position to enforce subrogation. If the surety, having made payment, is in position to enforce subrogation, the question cannot arise, because he has been already discharged in toto by said payment. The rule and the reason therefor are tersely expressed in *Holt v. Bodey,* 18 Pa. 207, at page 214, per Lowrie, J., as follows: "From the surety's right of substitution, his right of discharge, when the substitution has been rendered fruitless by the act of the creditor, follows as a corollary. We give up our own right against him, whose countervailing right we have destroyed."

Appellant contends also that the court below abused its judicial discretion in opening the judgment, because appellee was guilty of laches, in that he had actual or constructive notice of his present defense for a long time prior to its assertion in this proceeding. See *Schomaker v. Dean,* 201 Pa. 439, 50 A. 923. However, there is no evidence that appellee had actual knowledge that the bank had violated its duty to him until March, 1936, when the records were searched in connection with a contemplated sale of his own property. On the other hand, the issuance of the writ of scire facias to revive the lien of the judgment did not impose constructive notice upon appellee. The only defenses to such a writ

are satisfaction or discharge, or the nonexistence of the judgment itself. See *O'Connor, to use, v. Flick,* 274 Pa. 521, 118 A. 431; *Dowling, Adm'x, v. McGregor,* 91 Pa. 410; *Miller Bros. v. Keenan et al.,* 90 Pa. Superior Ct. 470; *Taylor v. Tudor et al.,* 83 Pa. Superior Ct. 459; *Curry v. Morrison,* 40 Pa. Superior Ct. 301. Since appellee had no knowledge of a defense in that category, there was nothing for him to do but to permit the judgment to be revived. He was not required to anticipate the conduct of the bank, and, accordingly, to peruse the dockets in search of an equitable defense. Promptly, upon learning of the bank's shuffling of the liens against the Stolar properties, he acted to protect his rights. Consequently, we find no merit in this branch of appellant's argument.

The remaining contention raised by appellant is to the effect that appellee was not injured by the postponement of the judgment lien; that the Stolar properties were sold at sheriff's sale in 1936 for taxes and costs which fixed the value thereof; that any right of subrogation to a first lien upon these properties which appellee might have secured by paying the judgment would have been worth nothing. The sheriff's sale was on the bond accompanying the mortgage held by appellant, to which the appellee was not a party and with which he had no connection. The subordination agreement in the instant case, and the subsequent sale of the Stolar properties on the bond accompanying the mortgage, rendered impossible any sale on the judgment of $1,800, to which appellee was a party, as a first lien. See *Holt v. Bodey,* supra. Appellee was not concluded as to the value of the properties by virtue of the sheriff's sale. Although appellant purchased the Stolar properties at the sheriff's sale on the bond for taxes and costs in the amount of $645.86, it is admitted that the properties at all times were worth more than $3,000. It is unquestioned that the properties were at all times

worth more than the judgment of $1,800, which was a first lien until the filing of the subordination agreement by the bank.

In those cases cited by appellant, the rule for which he contends was applied against those who were the principal debtors or sureties on the obligation on which the properties were sold as collateral. Although it is true that, as between the parties themselves, the amount realized at a sheriff's sale is conclusive as to the value of the property *(Beaver County Building & Loan Ass'n v. Winowich et ux.,* 323 Pa. 483, 187 A. 481), such is not the situation in the instant case.

Under the facts in the instant case the action of the bank in subordinating the lien of the $1,800 judgment to the lien of its mortgage, without the knowledge or consent of appellee, released or discharged appellee as surety from liability on that judgment. See 50 Corpus Juris p. 164, §268; *Beaver Trust Co. v. Morgan et al.,* supra; *First National Bank of Irwin v. Foster,* 291 Pa. 72, 139 A. 609.

Assignments of error are overruled.

Judgment is affirmed.