## Meyer *v.* Industrial Valley Bank and Trust Company, Appellant.

Argued November 21, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard J. Smolens,* with him *William T. Hangley,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Louis J. Goffman,* with him *H. Robert Fiebach,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION PER CURIAM, March 15, 1968:
Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:
Milford Meyer and Max Cohen, two attorneys whose offices were in the same building, had been friends for many years. Cohen, in need of funds, sought to borrow $13,000 from Industrial Valley Bank. When the bank refused to loan this amount without some security, Cohen approached Meyer and asked if Meyer would agree to pledge some of his own stock as

collateral for Cohen's loan. This Meyer readily agreed to do, for no compensation and as a pure gesture of friendship. On June 25, 1957, Meyer signed, in blank, a pledge agreement (the text of which is set out below),[1] pursuant to which he delivered to the bank 1500 shares of stock in the Sheraton Corporation. The bank then loaned Cohen $13,000, taking Cohen's demand note in exchange. Subsequent to this initial transaction, Meyer was twice permitted to substitute collateral. As a result, the collateral now involved in this litigation consists of $15,000 in Pennsylvania Turnpike bearer bonds.

By July 25, 1962 Cohen had reduced his debt to $8,000, and as a result, the bank returned to Meyer $5,000 of the $20,000 in bonds then held by Industrial. On February 21, 1963, without informing Meyer, Industrial served on Cohen formal notice that it would call for payment the remaining $8,000 on March 14, 1963. To this letter Cohen responded with the following transaction. Cohen approached the Girard Trust Bank and secured from it a loan sufficient to satisfy

---

[1] The pledge agreement recites the following:

"Philadelphia, Penna. 6/25/57

to INDUSTRIAL TRUST COMPANY:

I hereby declare that [Cohen] has my full consent to pledge [my] shares of [stock] with Industrial Trust Company *as collateral for any loan* to [Cohen] and that *so long as said securities may remain in the custody of said Industrial Trust Company, I expressly ratify and agree in advance to any and all agreements which said [Cohen] may make with Industrial Trust Company regarding the use of said collateral for any loans to [Cohen]* and I expressly authorize the said Industrial Trust Company to sell said securities at public or private sale in accordance with the terms of any note which said [Cohen] may give to represent ——————— loans, and hereby agree to save said Industrial Trust Company harmless and indemnified forever against any result which may follow such action.

Milford J. Meyer (s)"

(Emphasis supplied)

his debt to Industrial. (This loan was subsequently increased to $12,500.) Industrial on receipt of $8,-104.63 (the outstanding debt, plus interest) marked Cohen's obligation satisfied. As security for this new Girard loan, Cohen pledged Meyer's Turnpike bonds which Industrial willingly surrendered to Girard upon Cohen's authorization. Meyer was apparently unaware of this transaction, and continued to believe that his bonds were in the custody of Industrial. This belief was quickly shaken on Cohen's death, however.

Shortly after his friend's death, Meyer inquired of Industrial concerning the status of the Cohen loan. He was then informed that this loan had been satisfied on March 11, 1963, the day Industrial received $8,104.63, and that his bonds were now in the possession of Girard. Incensed, Meyer demanded return of his bonds—a demand which went unheeded. Shortly after this demand, however, the bonds again found their way into Industrial's possession when they were re-conveyed to Industrial by Girard, along with Cohen's note, in exchange for $12,935.43, the total amount of Cohen's indebtedness to Girard at the time of his death. Finally, Meyer instituted the present replevin action against Industrial for return of the bonds. The case was tried before a jury which returned a verdict for plaintiff Meyer. Industrial's motions for judgment n.o.v. and new trial were denied, and this denial affirmed per curiam by the majority. Because I believe that judgment n.o.v. should have been granted, or at minimum a new trial awarded, I dissent.

Simply stated, plaintiff's position is that he was a gratuitous surety for Cohen's loan, that any material alteration of the surety agreement made without Meyer's consent operates to discharge the surety completely (even if he has suffered no harm as a result

of the change), that the transfer of bonds from Industrial to Girard *was* such a material alteration, and that therefore Meyer is entitled to the return of all his collateral. Under plaintiff's theory, it is contended that the subsequent transfer of the bonds back to Industrial is without legal significance.

Appellant, Industrial, on the other hand, maintains that the pledge agreement signed by Meyer was broad enough to include, within its advance ratification clause, the Girard transfer. Alternatively, it is contended that Meyer's conduct subsequent to the signing of the agreement was sufficient to create actual consent on his part to the bond transfer. Finally, appellants believe that this case is controlled by §9-507 of the Uniform Commercial Code, which provides a remedy less severe than complete return of all bonds free of Cohen's indebtedness to Industrial.

I agree with the court below that this controversy is not governed by the U.C.C. Admittedly, §9-507 of the Code does provide that in certain situations an injured surety may recover only to the extent of actual harm suffered. Thus, were that section to control this litigation, Meyer, if successful, could recover only the difference between the total value of his bonds and $8,104.63, the amount of Cohen's indebtedness to Industrial at the time the alleged breach occurred. However, §9-507 clearly applies only to those situations where there has been a default by the debtor. In fact, the entire portion of the code in which §9-507 is found is labelled throughout "DEFAULT". Act of October 2, 1959, P. L. 1023, §9, 12A P.S. §9-501 et seq. (Supp. 1966). Therefore, since it is uncontradicted that the loan was paid by funds from Girard on March 11, 1963, and was not to be considered in default until March 14, 1963, the "default" sections of the Code do not apply.

Appellant vigorously contends that the distinction drawn at common law between a gratuitous surety and one who receives consideration for his services is a meaningless one in today's business world. Support for such an argument lies only in the fact that the Uniform Commercial Code does not seem to distinguish between sureties on this ground. However, the Code does not apply here, and thus this case *is* still controlled by the common law, under which it is clear beyond peradventure that appellee's statement of the law in his brief is a correct one. Any material alteration in the surety agreement, made without consent of the gratuitous surety, operates as a complete, abso‑ lute discharge of the surety's obligation, even if the change made does not harm the surety. *Magazine Digest Pub. Co. v. Shade,* 330 Pa. 487, 199 Atl. 190 (1938) ; *Bensinger v. Wren,* 100 Pa. 500, 505 (1882). See also *Plummer v. Wilson,* 322 Pa. 118, 185 Atl. 311 (1936) ; *Brock's Assigned Estate (No. 1),* 312 Pa. 7, 166 Atl. 778 (1933).

Thus, this case is now reduced to a single question: was Industrial's transfer of the bonds to Girard a material alteration in the Meyer-Industrial pledge agreement, unconsented to by Meyer? Appellant sought to prove at trial that even if the transfer was a material alteration in the agreement itself, nevertheless Meyer consented to it. Industrial could not point to any specific consent by Meyer, so instead it relied upon appellee's general conduct vis-a-vis the bonds and Cohen's loan. Witnesses were called who testified that when $5,000 of bonds were returned by Industrial they were actually surrendered to Cohen, not Meyer, thus indicating that Meyer had given Cohen complete authority to handle the bonds as if they were Cohen's own rather than appellee's. Further testimony established that it was Cohen, or some‑

one from Cohen's law office, who took care of collecting the interest on Meyer's bonds. Industrial's theory was that this course of conduct indicated such complete authority in Cohen to use these bonds that this, in essence, acted as advance ratification for the Girard transfer. Meyer, of course, testified that he never intended this conduct to be anything more than ministerial on Cohen's part. I believe that the trial judge quite properly submitted to the jury the question of post-contract consent by Meyer, and I would be loathe to disturb the jury's finding of no consent. Construction of the pledge agreement itself, however, stands upon different footing.

In his charge to the jury, the trial judge instructed the members on the issue of how the pledge agreement should be construed: "I must say to you, members of the jury, that under the pledge agreement as I have read it this pledge agreement is a consent by the plaintiff for the deposit of his security as collateral with the Industrial Trust Company so long as the said securities may remain in the custody of said Industrial Trust Company." It is quite evident that this instruction took from the jury the opportunity to find that the language of the pledge agreement, on its face, authorized the transfer to Girard. In so charging that the agreement must be construed, as a matter of law, in favor of appellee I strongly believe that the trial court committed reversible error. I agree that the language is clear enough to support a binding instruction; but its clarity shines in the exact opposite direction from that envisioned by the lower court. The text of this agreement, reproduced in full in footnote 1, an agreement using words which belong to the vocabulary of any layman, recites that Meyer agrees in advance to "*all* agreements" made between Cohen and Industrial regarding the use of Meyer's collateral for "*any* loans"

to Cohen. (Emphasis supplied.) It does *not* say that the agreement cannot involve a third party such as Girard. It does *not* say that the loans to Cohen must come from Industrial's vault. So long as the agreement is made between Cohen and Industrial, the contract language is satisfied. Here, Industrial agreed with Cohen to transfer the bonds in exchange for the payment of Cohen's then outstanding debt; such a transaction, I submit, is clearly contemplated and authorized by the contract language.

Appellee's contention that the language "so long as said securities may remain in the custody of said Industrial Trust Company" absolutely precludes the Girard transfer, overlooks not only the obvious meaning of the words *"all* agreements", but also fails to consider another, equally reasonable construction of the custody phrase which would not conflict with the words "all agreements" or "any loans". The custody provision of this agreement, I believe, is intended to cover those situations (one of which actually occurred here), where some collateral is returned to the surety. This returned collateral, since it is no longer in the custody of Industrial, cannot be used by Industrial for "any agreements", or "any loans". It is interesting to note that all parties agree that if Industrial had refinanced Cohen's loan pursuant to this pledge agreement such procedure would clearly be permissible. Yet, in fact, that is really all that has happened in the present case, for Industrial now has custody of the bonds and Cohen's new demand note for twelve thousand dollars.

Finally, even assuming arguendo that the pledge agreement is not so clear as to require, on its face, a construction favorable to appellant, it *certainly* is not of sufficient clarity to support the jury charge actually given. It is a well established principle of law that

parol evidence will be admitted to show what the parties intended at the time a contract was signed if the terms of that contract prove to be ambiguous. *Consolidated Tile & Slate Co. v. Fox,* 410 Pa. 336, 339, 189 A. 2d 228, 230 (1963). Once such evidence is admitted, the issue becomes a question for the jury. *Easton v. Washington Cty. Ins. Co.,* 391 Pa. 28, 35, 137 A. 2d 332, 336 (1957). Therefore, at the very least, appellant is entitled to a new trial in order that the proper meaning of the pledge agreement can be decided by the trier of fact.[2] I dissent.

Mr. Justice MUSMANNO joins in this dissenting opinion.

---

[2] I realize that no record evidence appears on this precise issue, the parties having confined themselves to the issue of post-agreement consent. However, I do not think that the party with the burden of proof, here appellee, should be penalized if a new trial is awarded, since he was probably aware, through conference at side bar or in chambers, that the judge was prepared to rule as a matter of law that the agreement should be construed in his favor. This would perhaps account for his failure to present evidence on this point at the original trial.