510 A.2d 726

## CONTINENTAL BANK

v.

**Barry L. AXLER and Leslie C. Axler, His Wife, Appellants.**

Superior Court of Pennsylvania.

Argued April 18, 1985.

Filed April 21, 1986.

Reargument Denied June 30, 1986.

410

Charles G. Milner, Norristown, for appellants.

George J. Meng, Norristown, for appellee.

Before WICKERSHAM, BECK and CERCONE, JJ.

BECK, Judge:

Appellants Barry and Leslie Axler appeal the denial of their petition to open a judgment confessed against them under a surety agreement by which they became cosureties for a Continental Bank (Continental) loan to North Broad Distributors, Inc. (North Broad), a corporation which the Axlers and two other couples formed. Primarily, the Axlers contend on appeal that their surety obligation was discharged by a material modification in the relationship between North Broad (the principal debtor) and Continental (North Broad's creditor), namely, the sale of North Broad to

an individual who was not a cosurety of North Broad's debt to Continental. We hold that the sale of North Broad to a non-surety did not discharge the Axlers, and we affirm the order of the court of common pleas.

In 1976, North Broad was formed by three couples—the Axlers, the Paul Lipschutzes and the Paul Freedmans. One member of each couple was given a one-third interest in North Broad. On August 19, 1976, North Broad, through its president Paul Lipschutz, executed a nondiscount note to Continental in accordance with a North Broad corporate loan resolution which authorized either North Broad's president or North Broad's secretary (then Leslie Axler) to borrow money for North Broad. In connection with this note, the Axlers, the Lipschutzes and the Freedmans each personally signed identical surety agreements obligating them to pay North Broad's debt to Continental in the event North Broad defaulted.

On November 2, 1977, North Broad obtained another loan from Continental on the same terms as the first note. As of January 12, 1978, there remained a balance of $75,443.09 on the first note and $25,000 on the second note.

On January 12, 1978, the Axlers sold their interest in North Broad to Paul Freedman and to another individual who was not an originator of North Broad. By a letter dated February 1, 1978, the Axlers informed Continental that they were no longer owners of North Broad and requested that they be released as cosureties of North Broad's debt to Continental. By a letter dated February 9, 1978, Continental advised the Axlers that they would not be released as cosureties unless North Broad's indebtedness was fully paid or satisfactory substitute security for the indebtedness was pledged.[1]

1. This is in conformity with paragraph two of the parties' unlimited surety agreement which states:

This Agreement shall continue until Undersigned shall pay in full all Liabilities and shall continue in force until one calendar month after written notice of termination shall be given to BANK by Undersigned by registered mail letter actually received by BANK, the only evidence of which shall be return receipt card executed by

On March 3, 1978, North Broad executed a consolidation note with Continental in order to aggregate the outstanding balances on North Broad's first and second notes with Continental. The consolidation note was executed in the amount of $100,075.42 representing the remaining balance of $75,075.42 on North Broad's first note of August 19, 1976, and $25,000 on North Broad's second note of November 2, 1977.

By September 21, 1981, the balance on the consolidation note was $46,057.24. On that date, North Broad renegotiated a five-year note with Continental for the amount of $49,868.62 which constituted the outstanding principal on the consolidation note plus accrued interest thereon. A Time and Demand Loan Memorandum of Continental indicates that the purpose of the five-year note was to pay the balance on the consolidation note from North Broad's "cash flow of business, which in turn services buyout by Barry [Friedman] to [Lipschutz] and [Paul] Freedman." After the five-year note was executed, Lipschutz and Paul Freedman (the remaining original North Broad shareholders) sold their interest in North Broad to Joseph Barry "Buddy" Friedman.

North Broad made regular payments on the five-year note for a period of six months and then failed to make payments for the next three months. Consequently, on July 8, 1982, Continental confessed judgment against the Axlers, the Paul Lipschutzes and the Paul Freedmans as cosureties for North Broad's debt to Continental. At the time judgment was confessed, none of the cosureties were still involved in North Broad's business operations inasmuch as all the cosureties had previously sold their shares in North Broad.

On September 21, 1982, the Axlers filed a petition to open the confessed judgment. After oral argument, the Axlers'

BANK, provided that termination shall not affect any Liabilities in existence as of the end of the calendar month specified in such notice and all subsequent renewals and extensions thereof.

petition was denied, and the Axlers brought the present appeal.

 Since the decision whether to open a confessed judgment involves an exercise of the equitable power of a court of common pleas, our scope of appellate review of such a decision is limited. *Lalumera v. Nazareth Hospital,* 310 Pa.Super. 401, 456 A.2d 996 (1983). The common pleas court will not be overruled unless it has committed an error of law or clearly and manifestly abused its discretion. *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 469 A.2d 216 (1983); *Lalumera.*

 To have a confessed judgment opened, the petitioner "must act promptly, allege a meritorious defense, and present sufficient evidence of that defense to require submission of the issues to a jury." *Lazzarotti,* 322 Pa.Super. at 133, 469 A.2d at 218. " 'Thus, a court can no longer weigh the evidence in support of the defense, but ... the judgment should be opened where the evidence produced would be sufficient to prevent a directed verdict against [the petitioner].' " *Corson v. Corson's, Inc.,* 290 Pa.Super. 528, 533, 434 A.2d 1269, 1272 (1981) (citations omitted); Pa.R.C.P. No. 2959(e). Furthermore, the court should view the proffered evidence in the light most favorable to the petitioner because "the standard of sufficiency here is that employed on consideration of a directed verdict." *Greenwood v. Kadoich,* 239 Pa.Super. 372, 376, 357 A.2d 604, 606 (1976).

In their petition to open, the Axlers alleged as a meritorious defense that the sale of North Broad to Joseph Barry "Buddy" Friedman materially altered the relationship between North Broad and Continental and thereby discharged the Axlers from their obligation as cosureties for North Broad's debt to Continental. The common pleas court ruled that the change in ownership of North Broad did not, under the facts of this case, constitute a material alteration which would discharge the Axlers as cosureties. For the following reasons, we agree.

■ Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform. *See, e.g., Meyer v. Industrial Valley Bank and Trust Co.*, 428 Pa. 577, 239 A.2d 371 (1968) (dissenting opinion by Roberts, J.). In general terms, a suretyship represents a three-party association wherein a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety. Restatement of Security § 82 (1941); J. Murray, *Murray on Contracts* § 314 (1974); *see Meyer* (dissenting opinion by Roberts, J.); *First National Bank and Trust Co. v. Stolar*, 130 Pa.Super. 480, 197 A. 499 (1938); *Pure Oil Co. v. Shlifer*, 115 Pa.Super. 319, 175 A. 895 (1934). The existence of the suretyship is evidenced by a contract. *Thommen v. Aldine Trust Co.*, 302 Pa. 409, 153 A. 750 (1931); *Pure Oil Co.; Cohen v. Bank of Philadelphia*, 102 Pa.Super. 279, 156 A. 742 (1931).

Usually, suretyship problems arise because the three-party structure of a suretyship becomes dynamic rather than remaining static. After the signing of a suretyship contract, the creditor and the principal debtor may renegotiate the terms of the debtor's obligation to the creditor without obtaining the surety's assent to the changed obligation. When the debtor defaults, the creditor then seeks to have the surety perform the debtor's renegotiated obligation. Commonly, the surety asserts as a defense that he does not have a duty to perform the renegotiated obligation of the principal debtor since he did not consent to be liable for that new obligation. *See, e.g., Jacob Sall Building & Loan Association v. Heller*, 314 Pa. 237, 171 A. 464 (1934).

■ Cognizant of the problems posed by the three-party composition of suretyships, Pennsylvania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability

may be affected. *Schroyer v. Thompson,* 262 Pa. 282, 105 A. 274 (1918); *McClelland v. New Amsterdam Casualty Co.,* 322 Pa. 429, 185 A. 198 (1936). A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability. *Koch v. Moyer and Burkhart,* 103 Pa. Super. 270, 158 A. 198 (1931); Restatement of Security § 128, Comment d. Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged. *Meyer* (dissenting opinion by Roberts, J.); *Schroyer.* A compensated surety is discharged only if, without the surety's consent, there has been a material modification in the creditor-debtor relationship and said modification has substantially increased the surety's risk. *McClelland; see also* Restatement of Security § 128(b).

The record in the case sub judice does not clearly establish whether the Axlers were gratuitous sureties or compensated sureties for North Broad. Nevertheless, the nature of the Axlers' suretyship is not dispositive of the present appeal. As explained hereinafter, we conclude that the Axlers have not made a threshold showing of a material modification, without their consent, in the creditor-debtor (Continental-North Broad) relationship and hence cannot be discharged whether they are gratuitous sureties or compensated sureties.

Citing *Pure Oil Co.,* the Axlers argue that they should be discharged as sureties because the sale of North Broad to a nonsurety (Joseph Barry "Buddy" Friedman) of North Broad's debt materially modified the creditor-debtor relationship between Continental and North Broad. We find *Pure Oil Co.* distinguishable from the case sub judice.

As part of the suretyship contract, the surety in *Pure Oil Co.* agreed to be bound by any subsequent extensions of time for debt repayment which the Pure Oil Company as creditor might give the principal debtor. After the signing

of the suretyship contract, the debtor together with Pure Oil Company and ten other creditors of the debtor entered into a written agreement whereby (1) the eleven creditors agreed to accord the principal debtor a six-month extension of time for debt repayment and (2) control of the debtor-company was submitted to a group of trustees empowered "to fill vacancies on the board of directors [of the debtor]; to manage, supervise and reorganize the conduct of the [debtor's] business; to liquidate the assets of the [debtor] company; and to ... never mature the principal debt...." *Id.*, 115 Pa.Superior Ct. at 324–27, 175 A.2d at 897–98. We held that the surety's assent to extensions of time for debt repayment could not be construed to bind the surety to any other material modifications in the creditor-debtor relationship. Because in *Pure Oil Co.* material modifications had been made without the surety's consent, the surety was discharged.

However, it is well settled that a surety's consent to material modifications in the creditor-debtor relationship may be obtained as part of the suretyship contract. *Central-Penn National Bank of Philadelphia v. Tinkler,* 351 Pa. 123, 40 A.2d 389 (1945); *Pure Oil Co.; Travelers Indemnity Co. v. Rexnord, Inc.,* 37 Pa.Commw.Ct. 20, 389 A.2d 246 (1978); Restatement of Security § 128, Comment c. Where the surety has given such prior consent, the surety is contractually bound to accept the material modifications in the creditor-debtor relationship. *Central Penn National Bank of Philadelphia; Pure Oil Co.; Rexnord, Inc.;* Restatement of Security § 128, Comment c. A suretyship "contract must be given effect according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances." *Pure Oil Co.,* 115 Pa.Super. at 324, 175 A.2d at 897.

In contrast to the suretyship contract in *Pure Oil Co.,* the Axlers have signed a suretyship contract which provides not only that Continental may "grant extensions of time and other indulgences of any kind to [North Broad]" but also,

that the Axlers' suretyship "shall continue until [the Axlers] shall pay in full all Liabilities," that the Axlers have waived "all notices of the financial condition or of any adverse or other change in the financial condition of [North Broad]," that the Axlers have waived notice of "any other fact which might materially increase [their] risk," that the Axlers will be obligated for the "Liabilities of any partnership, firm, corporation or other company which may be a successor to [North Broad]," and finally, that Continental "shall have the right ... without notice to or consent from [the Axlers] ..., and without affecting, impairing or discharging, in whole or in part [the Axlers'] Liabilities ..., to modify, change or supplement ... any indebtedness ... or any agreement ... between [Continental and North Broad]."

Even if we were to assume arguendo, as the Axlers assert, that the sale of North Broad to Joseph Barry "Buddy" Friedman—a nonsurety of North Broad's debt—created a new entity which replaced North Broad, such a material modification in the creditor-debtor relationship would not discharge the Axlers as sureties. By the very terms of their suretyship contract, the Axlers consented to be obligated for the "Liabilities of any partnership, firm, corporation or other company which may be a successor to" North Broad. Thus, the suretyship contract in the present case, unlike the suretyship contract in *Pure Oil Co.*, fully encompasses the modification that occurred in the creditor-debtor relationship, and the Axlers remain contractually liable for the debtor's obligation.

█ Citing *Stolar*, the Axlers collaterally contend that the sale of North Broad should result in their discharge as sureties because Joseph Barry "Buddy" Friedman impaired their security for North Broad's debt by liquidating North Broad's inventory but not applying any liquidation proceeds to repayment of North Broad's debt to Continental. We deem *Stolar* inapposite.

After the signing of the suretyship contract, the creditor and the debtor in *Stolar* renegotiated the terms of the

debtor's obligation so that the creditor acquired a mortgage from the debtor in satisfaction of certain lien judgments. The creditor then subordinated a prior lien judgment on which the surety was obligated, to the lien of the recently acquired mortgage and in this manner impaired the surety's security for the original debt. We held that to the extent the creditor failed to preserve the surety's security for the lien judgment, the surety was discharged pro tanto. *See also* Restatement of Security § 132. In the instant case, the Axlers have not shown any way in which the creditor (Continental) has endangered security for North Broad's debt. Consequently, because the creditor (Continental) has not impaired security for the debt, the holding of *Stolar* is inapposite.

Rather than having asserted the creditor's impairment of security for North Broad's debt, the Axlers have complained that the sale of North Broad by the Axlers' co-sureties (the Lipschutzes and the Paul Freedmans) to a nonsurety of North Broad's debt (Joseph Barry "Buddy" Friedman) has increased their risk of loss and should discharge them as sureties. Specifically, the Axlers have alleged that North Broad's new owner ("Buddy" Friedman) has failed to preserve the security for North Broad's debt to Continental by liquidating North Broad's assets.

Our reading of the suretyship contract signed by the Axlers persuades us that the Axlers remain contractually liable as sureties despite the actions by North Broad's new owner (Mr. Friedman) which resulted in North Broad's defaulting on its debt to Continental. The Axlers' suretyship contract fully anticipates the potential sale of North Broad to persons other than the North Broad originators who were also sureties of North Broad's debt to Continental. The suretyship contract not only binds the Axlers for the liabilities of both North Broad and its successors but also states that the Axlers have waived notice of "any ... fact which might materially increase [their] risk" as the sale of North Broad to a nonsurety might be expected to do. Therefore, in signing the detailed suretyship contract out-

lined in this case, the Axlers knowingly undertook the risk that, for whatever reason, neither North Broad nor its successors would repay the debt to Continental.

In summation, we conclude that the Axlers have failed to offer sufficient evidence that the sale of North Broad to a nonsurety of North Broad's debt discharges them as sureties either because there was a material modification, without their consent, in the creditor-debtor relationship between Continental and North Broad or because the creditor (Continental) impaired the security for North Broad's debt. Accordingly, the Axlers are not entitled to have the confessed judgment opened on these grounds.

As an alternative ground for opening the confessed judgment, the Axlers assert the improper execution of the five-year note on which judgment was confessed against them. The note was signed on behalf of North Broad by "Paul Lipschutz, consultant." While the Axlers do not dispute the authenticity of Mr. Lipschutz's signature on the note, they contest the capacity in which Mr. Lipschutz executed the note.

North Broad's corporate loan resolution required the signature of either North Broad's president or North Broad's secretary as binding authorization for loans to North Broad. Since the Axlers do not contend that Mr. Lipschutz was no longer North Broad's president when he signed the five-year note, we hold that the Axlers have not presented adequate evidence of a defect which would invalidate the note and require the opening of the judgment confessed against them on the five-year note. *Lebowitz v. Keystone Insurance Agency, Inc.*, 198 Pa.Super. 495, 182 A.2d 289 (1962) ("The title of an agent who signs an instrument on behalf of a corporation is not an essential ingredient so long as his power to bind the corporation is not denied. . . ."); *see Prestressed Structures, Inc. v. Bargain City, U.S.A.*, 413 Pa. 262, 196 A.2d 338 (1964).

Since the Axlers have not proffered sufficient evidence of a meritorious defense to the confessed judgment,

we find that the court of common pleas did not abuse its discretion in denying the Axlers' petition to open the confessed judgment.[2]

Order affirmed.

**2.** In the interest of completeness, we note that the Axlers may have other forms of relief available to them. Where a surety has performed upon the default of the principal debtor, the surety has a right to reimbursement from the principal debtor and is subrogated to the rights of the creditor against the principal debtor. Restatement of Security §§ 104 and 141; see also J. White & R. Summers, *Uniform Commercial Code* § 13–16 (2d ed. 1980). Additionally, "[a] surety who in the performance of his own obligation discharges more than his proportionate share of the principal's duty is entitled to contribution from a cosurety." Restatement of Security § 149.