## United States Fidelity and Guaranty Company v. R.W. Lutz Electrical Contractor Inc.

*R. James Reynolds Jr.*, for plaintiff.
*Charles J. Hartwell*, for defendants.

DOWLING, *J.*, October 10, 1989 — This action is for indemnification by plaintiff-surety against defendants for expenses and attorneys' fees in connection with a federal action brought against it by defendant Lutz's supplier, Willow Branch Industries Inc. Defendants have counterclaimed for losses incurred in reimbursing plaintiff when it improperly paid one of defendant's suppliers on another project, and for refusing to further bond defendants. This counterclaim alleges in count I that by paying the disputed monies and subsequently refusing to issue further bonds, plaintiff was negligent, and in count II that by so doing it breached its contract with defendants.

Before us are plaintiff's preliminary objections to both counts of the amended counterclaim. Plaintiff alleges that Pennsylvania law does not impose upon sureties any general tort "duty of reasonable care" with respect to its principal and that a payment bond does not constitute a contract between the surety and its principal.

For the reasons set forth below, we grant plaintiff's demurrer on the first issue, and deny it on the second.

Due to the paucity — or more precisely, the absence — of Pennsylvania case law setting forth a theory of negligence which governs a failure to "investigate" payment bond claims prior to payment, it is not possible to review the legal status of defendants' claim, in this area, by the usual manner of examining the nuances and subtleties of judicial precedent. Indeed defendants, in their own brief, seem to implicitly concede the weakness of their case by their choice of authority on which to rely. Their citation to *Raab v. Keystone Insurance Co.,* 271 Pa. Super. 185, 412 A.2d 638 (1979) is far afield, from a factual standpoint, relating as it does

to a claim by an injured party in an automobile accident, to no-fault benefits due and owing from his insurance carrier. We are further troubled by the fact that the only case to which defendants are able to cite for a statement of the legal principle on which they take their stand (and even this quoted language is ambiguous in the extreme) is an eight-year-old case from the Court of Appeals of Louisiana.

While we have nothing but the highest respect for our brethren from the Pelican State, we are mindful of the fact that Louisiana — more, perhaps, than any other state in our Federal Union — has a legal tradition of a distinctive, even unique, character. The impact upon its development of the Code Napoleon is only the most famous of these colorful elements. If the case at bar required a simple application of such principles as full faith and credit, or res judicata, or judicial notice, this would not matter. But where defendants are, essentially, asking us to acknowledge the existence of a particular concept of tort law, for which no supportive Pennsylvania case or statutory authority can be adduced, the bayou country seems to us a peculiarly remote locale in which to search for it.

There are others elements of defendants' reasoning in the instant case that are, quite frankly, beyond the scope of this court's comprehension. Defendants seek to justify a compound citation, to both the Restatement (Second) of Torts, and the case of *DeJesus v. Liberty Mutual Insurance Company*, 423 Pa. 198, 223 A.2d 849 (1966), by reminding us that "a party to a contract may become liable for failure to exercise reasonable care in performing his undertaking, if the other party suffers physical injury out of such failure." Since there is nothing, in the pleadings, depositions or briefs, to indicate that

physical injury has occurred anywhere in this case, this interjection can be most reticently described as a red herring. Defendants then go on to state that "it is not a great extrapolation" to declare that the same principle applies to financial injury. This, unfortunately, reminds us of Oscar Wilde's famous declaration that the man who assures you that he will not lecture you on a point invariably begins by breaking his word. It *does* seem to us a leap, of some consequence, to equate physical with financial injury, just as it would if an attorney attempted to declare that there is no great difference between the concepts of adverse possession and the condemnation of land for tax delinquency, on the grounds that both are methods of transferring title to realty. Also, we are at something of a loss to understand defendants' statement that its claim is based on "clear language . . . requiring payments limited to sums as may be 'justly due' to supplier." While this court flatters itself that it has an above-average capacity for imagination, which enables it to envisage a broad range of possible fact situations, it cannot conceive of any business arrangement, contract or transaction that would be predicated — implicitly or explicitly — upon the payment of sums that were *improperly* claimed by a payee. It seems to us, rather, that this is a simple recitation of a universally accepted implicit understanding, on the same order as a clause in which the parties to a contract promise to use their "best efforts" to carry out their obligations.

For all of the above reasons, we grant the plaintiff's request for a demurrer on the first issue.

However, on the second issue, concerning the breach of contract question, the situation is reversed. Here it seems to us that it is the plaintiff whose arguments are less than persuasive in their

power. Plaintiff's reliance upon the single case of *Continental Bank v. Axler*, 353 Pa. Super. 409, 510 A.2d 726 (1986), appeal granted, 516 Pa. 626, 532 A.2d 437 (1987), appeal dismissed, 518 Pa. 58, 540 A.2d 267 (1988), as a demonstration of the proposition that "a payment bond does not constitute a contract between a surety and its principal; rather, it is a guarantee issued by a surety to an obligee on behalf of its principal" is flatly contradicted by the language of *Axler* itself, which states:

"In general terms, a suretyship represents a three-party association wherein a creditor is entitled to performance of a *contractual* duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety. Restatement of Security §82 (1941); J. Murray, Murray on Contracts §314 (1974); see *Meyer* (dissenting opinion by Roberts, J.); *First National Bank and Trust Co. v. Stoler*, 130 Pa. Super. 480, 197 Atl. 499 (1938); *Pure Oil Co. v. Shlifer*, 115 Pa. Super. 319, 175 Atl. 895 (1934). *The existence of the suretyship is evidenced by a contract. Thommen v. Aldine Trust Co.*, 302 Pa. 409, 153 Atl. 750 (1931); *Pure Oil Co.; Cohen v. Bank of Philadelphia*, 102 Pa. Super. 279, 156 Atl. 742 (1931)." *Id.* at 415, 510 A.2d at 729. (emphasis supplied)

We leave it to subtler minds than our own to show how the existence of a relationship can be "evidenced" by a contract, the duties attendant on that relationship be defined as "contractual" duties, and yet the relationship itself not be held to "constitute a contract." Plaintiff's decision even to mention this case is perplexing in the extreme. The interpretation then accorded it by plaintiff reminds us of nothing so much as the impostor in Moliere's *The Doctor In Spite of Himself,* who, upon telling a patient that his heart is on the right side of the

chest, is respectfully reminded by the patient that it is on the left. With a magisterial wave of his hand, the "doctor" replies, "We have changed all that."

Accordingly, we enter the following

## ORDER

And now, October 10, 1989, plaintiff's preliminary demurrer to count I of the amended counterclaim is sustained and is overruled with respect to count II.