NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1367
_____

BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 COMBINED WELFARE FUND;
BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 COMBINED PENSION FUND;
BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 COMBINED VACATION
FUND; BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 COMBINED ANNUITY
FUND; BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 POLITICAL ACTION
AND EDUCATION FUND; BOARD OF TRUSTEES, COMPOSITION ROOFERS
UNION LOCAL NO. 30 APPRENTICESHIP FUND; ROOFING CONTRACTORS
ASSOCIATION INDUSTRY FUND; DELAWARE VALLEY ROOFING
CONTRACTORS ASSOCIATION INDUSTRY ADVANCEMENT FUND

v.

INTERNATIONAL FIDELITY INSURANCE COMPANY,
                                        Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action Nos. 2:10-cv-04721, 2:10-cv-04722)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2015
_____

Before: GREENAWAY, JR., SCIRICA, and ROTH, *Circuit Judges*.

(Opinion Filed: March 15, 2016)

1

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

Appellant International Fidelity Insurance Company appeals the District Court's grant of summary judgment in favor of Appellees on their claims for breach of surety bonds. For the following reasons, we will affirm.

## I. BACKGROUND

Appellees are trust funds established under collective bargaining agreements ("CBAs") between Local Union No. 30 of the United Union of Roofers, Waterproofers and Allied Workers and two companies, Brown's Roofing, Inc. ("Brown") and Brown & Guarino, Inc. ("B&G"). The CBAs required Brown and B&G to make monthly contributions to Appellees. To guarantee their contributions to Appellees, Brown and B&G entered into identical surety bonds with Appellant in June 2006.

Both surety bonds required Appellees to notify Appellant of a claim against the bonds within one year of "actual knowledge of default" by either Brown or B&G. App. 60, 74. In the bond agreements, the parties defined "default" as "occurring at such a point in time as it is determined within the sole and exclusive discretion of [Appellees], that [Brown or B&G] has accrued delinquencies in contributions which cannot be resolved with [Appellees]." *Id.* The notice of default was a condition precedent that triggered Appellant's payment obligations to Appellees under the surety bonds.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

In August 2008, Brown and B&G were delinquent on their contributions to Appellees and Appellees sued the companies. The suits were resolved when Appellees entered into settlement agreements with each company in January 2009 and secured consent judgments by mid-2009. However, in January 2010, Brown and B&G stopped making contributions under both the settlement agreements and the CBAs. In June 2010, Appellees sent Appellant letters of claims on the Brown and B&G surety bonds, asserting that the companies had been in default since January 2010. Appellant denied liability.

Appellees sued Appellant to enforce the Brown and B&G surety bonds. Following discovery, the parties filed cross-motions for summary judgment. The District Court granted summary judgment in favor of Appellees, concluding that Appellant was in breach of the two surety bonds. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of summary judgment, applying the same standard as the district court. *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015). To be granted summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496 n.8 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). Here, the parties agree that no genuine dispute as to any material fact exists and that Appellees' claims for breaches of the Brown and B&G surety bonds should be decided as a matter of

3

Pennsylvania contract law. *See Lesko v. Frankford Hosp.*, 15 A.3d 337, 342 (Pa. 2011) (interpretation of an unambiguous contract presents a question of law); *Beckwith Mach. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 890 A.2d 403, 406 (Pa. Super. Ct. 2005) (a surety bond is a contract and its language determines the extent of the surety's liability).

## III. ANALYSIS

### A. Appellees' June 2010 Notices of Default Were Timely

Appellant first defends liability on the ground that the notices of default sent by Appellees in June 2010 were untimely because Appellees had "actual knowledge" of default by Brown and B&G in August 2008, when Appellees sued the companies based on their delinquencies. Appellant's Br. at 20. Appellant argues that Appellees' filing of suit was a "judicial admission" that Brown and B&G "had accrued delinquencies in contributions that could not be resolved without judicial intervention." *Id.* at 23. Even if it is true that Appellees had determined that the companies' delinquencies could not be resolved without filing suit, the phrase "without judicial intervention" is not in the definition of default as agreed upon by the parties in the surety bonds. Appellant's argument is defeated by the unambiguous language of the surety bonds, to which we must give effect. *See Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (a court interpreting a contract must give effect to the parties' intent, as manifested by the contract's clear and unambiguous language).

The parties defined "default," in the surety bonds, as "occurring at such a point in time as it is determined within the sole and exclusive discretion of [Appellees], that [Brown or B&G] has accrued delinquencies in contributions which cannot be resolved

4

with [Appellees]." App. 60, 74. Appellant offers no case law suggesting that a trustee's decision to file suit over delinquencies constitutes an admission, as a matter of law, that the delinquencies cannot ever be resolved. We agree with the District Court that, by the plain language of the surety bonds, the parties left the determination of default to the "sole and exclusive" discretion of Appellees.[1] Here, Appellees determined that default occurred in January 2010 and notified Appellant of the companies' default in June 2010. Therefore, the June 2010 notices of default were timely.[2]

## B. Appellees Acted Reasonably and in Good Faith

Appellant next argues that Appellees' surety bond claims should be dismissed because Appellees did not exercise their discretion reasonably and in good faith, in violation of the duties of good faith and fair dealing implied in the surety bonds. Appellant maintains that Appellees acted unreasonably by not declaring default by Brown and B&G in August 2008 when the companies were delinquent and by waiting to

---

[1] Appellant contends that the District Court "erred by rewriting the Bonds to include an affirmative 'declaration' of default" by Appellees when it concluded that the Brown and B&G bonds granted "sole and exclusive discretion to [Appellees] in declaring default." Appellant's Br. at 24. This argument is unavailing. Although the surety bonds use the verb "determine" rather than "declare," the verb choice does not change the fact that, under the surety bond, Appellees had sole discretion to decide when a delinquency ripened into a default. As such, we simply decline to impute a determination of default to Appellees based on their decision to file suit against Brown and B&G.

[2] Appellant argues that declining to find default when Appellees sued the companies is "contrary to the well-established principle of suretyship that the liability of the surety accrues at the same time as that of the bond principal." Appellant's Br. at 25 & n.3 (citing *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. Super. Ct. 1994)). Although "[i]t is a fundamental principle of surety law that upon default by the principal, both principal and surety thereupon become liable on the original undertaking," *Leedom*, 647 A.2d at 226, here, the parties contracted to define default as a point in time left to the discretion of Appellees. Thus, the parties contracted around this general principle and it is inapposite.

5

do so until June 2010. The District Court concluded that Appellees were not subject to these implied duties because Appellees were not parties to the surety bonds, but held, in the alternative, that Appellees acted in accordance with the duties. We need not decide whether, as a matter of Pennsylvania contract law, Appellees were subject to duties implied in the surety bonds between Appellant and Brown and B&G because we agree with the District Court that Appellees acted reasonably and in good faith.

Appellees reasonably believed that the best course of action in August 2008 was to file suit with the aim of entering into settlement agreements with Brown and B&G, rather than filing a bond claim. First, the trustee for Appellees testified that filing a bond claim would have been a "death knell" for Brown and B&G that would put them "out of business." App. 302, 311. As the District Court explained, it was in Appellees' interests for the companies to remain in business and employ Appellees' union members. Second, both Brown and B&G had previously resolved delinquencies with Appellees through settlement agreements entered into after litigation was initiated. It was reasonable for Appellees to believe that Brown and B&G's delinquencies as of August 2008 could be similarly resolved through settlement agreements, and it was also reasonable for Appellees to wait to file bond claims until it was evident that Brown and B&G could not comply with those agreements.

Appellant contends that Appellees delayed their filing of bond claims to maximize Appellees' damages. We decline to ascribe this bad faith to Appellees. It was reasonable for Appellees to believe in August 2008 that Brown and B&G's delinquencies could be addressed in settlement agreements—as they were by January 2009—and it was

6

reasonable for Appellees to believe that Brown and B&G would comply with the settlement agreements—as they did until January 2010. Therefore, we find that Appellees acted reasonably and in good faith.[3]

## C. Appellees Did Not Materially Modify the Surety Bonds

Appellant further asserts that its obligations under the surety bonds are discharged because Appellees materially modified the bonded CBA obligations by entering into settlement agreements with Brown and B&G. The settlement agreements required the companies to resolve their delinquencies by making payments over an 18-month period, in addition to the regular monthly payments.

It is well established in Pennsylvania law that a surety is completely discharged of its obligation "if, without the surety's consent, there has been a material modification in the creditor-debtor relationship and said modification has substantially increased the surety's risk." *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999) (quoting *Cont'l Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. Ct. 1986)). A modification is material if it is "a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original

---

[3] Appellant also argues that Appellees failed to mitigate their damages. Appellant failed to plead the affirmative defense of failure to mitigate and therefore has waived the claim. *See Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (citing *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1448 (3d Cir. 1996) (applying Pennsylvania law); *Williams v. Masters, Mates & Pilots of Am.*, 120 A.2d 896, 901 (Pa. 1956)). In any event, to prove a failure to mitigate, Appellant must demonstrate what reasonable actions Appellees failed to undertake, *see Koppers*, 98 F.3d at 1448, and we have concluded that Appellees acted reasonably.

agreement on which the surety accepted liability." *Id.* (quoting *Cont'l Bank*, 510 A.2d at 729).

Appellant argues that the companies' dual payment obligations substantially increased its risk because the companies' total monthly obligations increased their risk of defaulting. However, Appellant has not made the threshold showing of a material modification to the relationship between Appellees and Brown and B&G. *See Cont'l Bank*, 510 A.2d at 729 (defense of discharge failed when guarantors failed to make a "threshold showing of a material modification without their consent, in the creditor-debtor . . . relationship").

The settlement agreements did not substantially change the terms of the CBAs because, although the agreements increased the companies' total monthly obligations, the settlement payments consisted of the companies' obligations under the CBAs—i.e., the obligations on which Appellant accepted surety liability. *Cf. McIntyre Square Assocs. v. Evans*, 827 A.2d 446, 452 (Pa. Super. Ct. 2003) (holding that an extension of a five-year lease for another five years with a "significant[]" increase in rent was a material modification); *Reliance*, 734 A.2d at 839 (holding that a twentyfold increase in a bonded obligation was a material modification). Moreover, Appellant's total surety exposure was the same because the consequences of breaching the settlement agreements were the same as those for defaulting under the CBAs: the companies would owe all unpaid contributions, related interest, liquidated damages, and attorneys' fees and costs. *See* App. 60, 74, 156, 200. Therefore, we cannot conclude that the settlements substituted terms or obligations that were "substantially different from the original agreement[s] on

8

which the surety accepted liability." *Reliance*, 734 A.2d at 838 (quoting *Cont'l Bank*, 510 A.2d at 729).  Accordingly, we agree with the District Court that the settlement agreements did not materially modify the companies' CBA obligations so as to discharge Appellant from liability under the surety bonds.

### D.  The B&G Bond Rider Is Valid

Appellant defends partial liability on the B&G surety bond on the ground that a May 2008 rider to the bond increasing the maximum surety liability from $400,000 to $800,000 is void because Appellees did not notify Appellant of B&G's delinquencies prior to Appellant issuing the rider.  The District Court equated Appellant's argument with an allegation of fraud and concluded that Appellant had failed to establish that Appellees fraudulently concealed B&G's delinquencies.

We reach the same conclusion as the District Court.  Appellees owed Appellant a duty of disclosure of B&G's delinquencies if Appellant had requested the information or if Appellees knew that or had reason to know that Appellant was unaware of the information.  *See Park Paving Co. v. Kraft*, 105 A. 39, 40 (Pa. 1918) ("[W]here the principal is in default, and the surety executed the bond in ignorance thereof, he will not be bound, where *knowledge of such default was withheld from him by the obligee*, but . . . where the surety has knowledge of [the default], the bond is good.") (emphasis added).  In other words, concealment of facts material to Appellant's decision to issue the B&G rider would constitute fraud upon Appellant that would negate Appellant's liability as to the rider.  *See id.*

9

Here, Appellant simply argues that Appellees should have notified Appellant of B&G's delinquencies, but offers no facts indicating concealment. There is no evidence that Appellant requested information about B&G's financial condition from Appellees prior to issuing the B&G bond rider. Nor has Appellant established that Appellees should have known that Appellant was unaware of the information. Moreover, Appellees had no reason to believe that Appellant—a sophisticated surety company—would not investigate B&G's financial condition prior to increasing the maximum surety liability of B&G's bond. *Cf.* Restatement (First) of Security § 124 cmt. b ("A creditor may have a lesser burden of bringing facts to the notice of a compensated surety who is known to make careful investigations before taking any obligation than to a casual surety who relies more completely upon the appearances of a transaction."). As the District Court noted, Appellant had concerns as early as 2007 about B&G's financial condition. Therefore, we conclude that the rider is valid and Appellant is liable for the full sum of the B&G bond.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

10